# Eshleman *et al. versus* Harnish *et al.*

1. Defendants agreed to furnish to Bowers money not exceeding $10,000 to enable him to make horse-rakes; Bowers to put them into market and, sell them as rapidly as possible, all the proceeds to be paid to defendants until the advances should be refunded. *Held*, that this gave defendants no control over the rakes.

2. Plaintiffs had furnished to Bowers castings before the agreement; and,

26 P. F. SMITH—7

[Eshleman v. Harnish.]

afterwards before they knew of it, and charged them to "Bowers:" after being shown the agreement they furnished castings as before and added " & Co." to the entries assuming that he and defendants were partners. *Held,* that these circumstances did not change the relation between Bowers and defendants.

3. Afterwards plaintiffs and Bower requested defendants to make a payment to plaintiffs for castings; they did so and requested plaintiffs to hurry with the rest of the castings for the remainder of the rakes—" they would settle and pay the balance when they were delivered." *Held,* not to take the case out of the Statute of Frauds of April 26th 1855, sect. 1, and make defendants liable to plaintiffs for castings afterwards delivered to Bowers and charged to " Bowers & Co."

4. To prove a change of relation so as to take a case out of the Statute of Frauds, it must be by clear and indubitable evidence.

5. In the books of the plaintiffs, both before and after the agreement, some charges were to " Bowers" and some to " Bowers & Co." *Held,* that under the circumstances, it was error to admit it as a book of original entries.

6. The book was not evidence of performance of a special contract with the defendants, and could be received only as a memorandum of items to refresh the memory of the witness.

May 6th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Lancaster county :* No. 59, to May Term 1874.

This was an action of assumpsit commenced September 4th 1871, by Benjamin W. Harnish and William C. Beecher, trading as Beecher & Harnish, against Benjamin Eshleman and Cyrus N. Herr.

The plaintiffs' claim arose under the following circumstances:—

On the 27th of January 1868, the defendants and Amos K. Bowers entered into an agreement : " That the said Eshleman and Herr agree to furnish to the said Bowers such sums of money as he may require from time to time, up to the 1st day of May, A. D. 1868, to enable him to complete the horse-rakes and other implements now in construction at his machine-shop in Beaver street, Lancaster city, Pa., not to exceed in the aggregate, the sum of ten thousand dollars.

" The said Bowers agreeing to finish the said rakes and other implements, in a good and substantial manner, as rapidly as possible, and to complete at least eight hundred rakes before the 1st day of May next, 1868, and to put them into market, and sell them as rapidly as possible; all the proceeds of the sales or exchanges, either cash or other securities or goods, to be paid over, assigned and delivered to the said Eshleman and Herr, as fast as received, until the whole amount advanced, together with interest, on the various sums, has been fully refunded. The said Eshleman and Herr to have free access to the books and papers relating to the said business, at any and all times that they may reasonably desire to examine the same. The said Bowers also agreeing to keep the buildings, machinery and stock fully insured, and to have

[Eshleman v. Harnish.]

the policies made payable in the event of loss, to the said Eshleman and Herr, and also agreeing to give them a judgment-bond in the sum of fifteen thousand dollars, to indemnify and secure to the said Eshleman and Herr, the repayment of any such sum or sums of money, as they may advance, or become responsible for, on account of him, the said Bowers or of his business. The said sum or sums to be fully paid on or before the 1st day of January, A. D. 1869. It is expressly agreed that the said Bowers shall be liable to make good unto the said Eshleman and Herr, all paper or other securities which may be turned over to them by the said Bowers, for the full face value thereof." * * *

At the same time Bowers gave to the defendants a judgment-bond in the penalty of $15,000 with condition, " that whereas the said Benjamin Eshleman and Cyrus N. Herr, at the special instance and request of the said Amos K. Bowers, have agreed to furnish the said Amos K. Bowers with money from time to time until May 1st 1868, in order to enable him to carry on the business of manufacturing agricultural implements, for the benefit and accommodation of him the said Amos K. Bowers. If, therefore, the said Amos K. Bowers, his heirs, executors, administrators and assigns, or any of them, shall and do well and truly repay or cause to be repaid unto the said Benjamin Eshleman and Cyrus N. Herr, all such sums of money as may from time to time be advanced to, or on account of the said Amos K. Bowers, by them, the said Benjamin Eshleman and Cyrus N. Herr, on or before the 1st day of May, A. D. 1868, together with interest for the same, * * * the obligation to be void," &c.

Bowers had been engaged in the manufacture of agricultural implements in partnership with one Eckman up to about January 1st 1868, when he bought Eckman out and continued the business alone.

The plaintiffs had been furnishing Bowers & Eckman with castings for horse-rakes and the other implements and continued to furnish them to Bowers; they claimed that the defendants became personally responsible to them for the payment of a balance due to them from Bowers.

The case was tried November 28th 1873, before Hayes, J.

For the plaintiffs Bowers testified, that after the agreement with defendants had been made he went to the plaintiffs to order the castings, he showed plaintiffs the agreement. The plaintiffs made and delivered him the castings until about April, and Harnish then came to him for some money. Harnish and witness went to see defendants and told them Harnish wanted pay for the castings; they talked the matter over; Harnish agreed to take a note for $800, if defendants would pay the interest on it, they gave him the note and told him " to hurry on with the rest of the castings to finish the 800 rakes," he furnished them, witness put them into the

[Eshleman *v.* Harnish.]

rakes; defendants paid the $800 note on account of these rakes; witness ordered the goods to make the rakes and defendants paid for them when they had the money; he sold the rakes and gave them orders to pay; he never was agent for defendants; he went into the arrangement with ·defendants to raise money to finish the rakes; he had ordered some castings from plaintiffs before the agreement and afterwards ordered more and told plaintiffs about the agreement and where the proceeds were to come from.

B. W. Harnish (plaintiff) testified :—

"In 1867, the latter part of December, Mr. Bowers and I talked over about castings for the building of horse-rakes; he said that he was going to build some the coming season, and wanted some castings; he said we should make some and bring same to the shop; we commenced making castings and delivered some the forepart of January 1868; after we had delivered the first or second lot, I met Mr. Bowers in Lancaster, he told me he had entered into an agreement with Eshleman & Herr, and showed me a copy of it—I read over this agreement—and upon the strength of that, we delivered these castings, hauled them down to the shop in Beaver street; a little before the 1st of April 1868, I met Bowers again here in town, and spoke about getting some money from the parties; in consequence of what Mr. Bowers then said, I applied to Messrs. Eshleman & Herr, in company with Mr. Bowers, and asked them for some money on account of the castings which had been delivered; first, they asked me if I had a bill; I told them I had not; they then asked me if I had any idea what the bill would be for the castings delivered; this was the 9th of April, the time this note was given; I told them as near as I could tell, it was somewhere between eight hundred and one thousand dollars; one of them said that money was a little scarce with them at that time, and they asked me, if I would be willing to take a note for $800 for sixty days, if they would pay the discount on it; I told them that I would; they executed a note and gave it to me and I realized the money from the Lancaster Bank; before we parted there they said we should hurry up the balance of the castings for the remainder of the rakes; that they would settle for the balance after they were delivered—the balance of the castings; Mr. Herr, I think it was, said to me that they had given me now a pretty good part of this money and we would have to give them a little time for the rest of this money; that we would have to be easy on them for the balance. Then we talked over the matter and one thing or another, and before we separated, they made the emphatic request that we would be particular in hurrying up these castings to enable them to finish the rakes; and in pursuance of that, we did hurry and finish the castings and delivered them at the shop in Beaver street."

Plaintiffs then produced their book of original entries; the first

[Eshleman v. Harnish.]

entry was January 4th 1868, to Bowers & Eckman; the next January 24th to Bowers & Co.; next January 30th to Bowers alone; the next February 7th to A. K. Bowers & Co.,; the next February 15th to A. K. Bowers; following which were a very large number of entries of different dates up to July 2d, all to A. K. Bowers & Co.

Witness (plaintiff) then was asked: "Why are some to Bowers & Eckman, some to A. K. Bowers, and some to A. K. Bowers & Co. ?"

He answered: "In the year 1867 Bowers & Eckman carried on this business, and in December, when I met Mr. Bowers, I was under the impression that they were still in partnership, but Mr. Bowers informed me then, or in January following, that he had bought out Mr. Eckman, and was going to run the shop himself that year; at the time I delivered the second load I knew this and then commenced charging to Amos Bowers or Amos Bowers & Co.; after two or three loads were delivered this other party got in—having seen this agreement or a copy of it, Mr. Herr & Mr. Eshleman with Mr. Bowers.

Q. "What did you mean by the Co. ?

A. "I meant Mr. Herr, Eshleman and Mr. Bowers.

Q. "When did you put this Co. ?

A. "After I knew Messrs. Herr & Eshleman were in combination with A. K. Bowers. I then added the '*& Co.*,' to the entries of the charges for castings made and delivered for the horse-rakes; we were in the habit of charging castings under that name without specifying the particular use for which they were made."

The defendants objected to the admission of the book in evidence; it was admitted and a bill of exceptions sealed.

Witness proceeded: "I furnished no castings to A. K. Bowers during that time; the balance was $563.24 due on the 6th of July 1868. The castings were all delivered at that time—at the date of that bill; at the time over here at Mr. Sprecher's, they said I shall hurry and deliver all the castings, and when they were all delivered, they would settle and pay for the balance; I spoke sometime afterwards to Mr. Eshleman about this, and he said they could not pay, they had lost money enough by Bowers. We sent no castings to Mr. Bowers's shop except for these rakes; there was a man of the name of Frantz for whom Bowers was making or repairing a corn-sheller; he told me to send the castings to Bowers's shop, which we did and charged them to Mr. Bowers; Mr. Frantz afterwards called and paid for the castings; I made the addition of '*& Co.*,' for my own satisfaction, after I found that."

Bowers, recalled, testified: "Beecher & Harnish delivered no other castings during the year 1868 than those for these rakes, except for the corn-planter, as mentioned by Mr. Harnish."

The plaintiffs' point and answer were :—

[Eshleman *v.* Harnish.]

" The court is respectfully asked to charge that, if the jury find the promise by defendants to pay to plaintiffs for the castings in question, and also find that the main purpose and object of such promise was not to answer for another, but to subserve some purpose of their own, such promise is not within the Statute of Frauds and the defendants are bound to pay to the plaintiffs the price or value of the castings sold and delivered."

" Answered in the affirmative, adding to 'some purpose of their own' the words ' as *virtual owners of the property.*"

The defendants' points were :—

1. The alleged promise if ever made, is void, being within the Statute of Frauds and Perjuries, which forbids a recovery on a promise to pay the debt of another not in writing.

2. Under the law and the evidence in the case, the verdict of the jury must be for the defendants.

To these points the court answered :—

" 1. This depends upon what the promise was—a fact for the jury to decide; if it was to pay for the castings as furnished to and for the defendants—then it would not be within the statute; if it was that the defendants would pay for them as delivered to and for Amos K. Bowers, and as constituting him the debtor, then it would be within the statute referred to.

" 2. The facts are for the determination of the jury : the law of the case, as applicable to the facts to be found by the jury according to the evidence, has been explained to the jury.   The finding of the jury should be according to the whole evidence."

The verdict was for the plaintiffs for $742.91.

The defendants took a writ of error and assigned for error the admission of plaintiffs' offer of evidence and the answers to the points.

*E. H. Yundt* (with whom were *B. F. Eshleman* and *D. G. Eshleman*), for plaintiffs in error, as to the evidence, cited Kline *v.* Gundrum, 1 Jones 248 ; Churchman *v.* Smith, 6 Wharton 146. The plaintiff's evidence was not sufficient to take the case out of the Statute of Frauds : Maule *v.* Bucknell, 14 Wright 52.

*A. M. Frantz*, for defendants in error.—The evidence was not of a promise to pay the debt of another but a promise on a new consideration : Arnold *v.* Stedman, 9 Wright 188 ; Weynard *v.* Crichfield, 3 Grant 113 ; Clymer *v.* DeYoung, 4 P. F. Smith 118 ; Hopkinson *v.* Davis, 5 Phila. Rep. 147 ; Addison on Contracts 38.

Chief Justice AGNEW delivered the opinion of the court, May 18th 1874.

The castings for which the plaintiffs claim payment were furnished to A. K. Bowers and not to the defendants ; Bowers was

[Eshleman v. Harnish.]

the manufacturer of the horse-rakes, and the plaintiffs began to furnish the castings for them before Bowers entered into the contract with the defendants to advance him the money. That contract gave the latter no control over the rakes. Bowers was to sell them and hand over the proceeds only in payment of their advances.

The plaintiffs knew nothing of this arrangement until Bowers exhibited the article to Harnish to show him that he would be provided with the means of payment. They charged the castings to A. K. Bowers, and it was only, as Harnish testifies, " after he knew Messrs. Herr &· Eshleman were in combination with A. K. Bowers, he then added the ' & Co.' to the entries of the charges made and delivered for the horse-rakes." It is evident he thought the agreement constituted Bowers and Eshleman & Herr partners. Then it was not until the 9th of April, when he had already finished about two-thirds of the castings, he had the conversation with the defendants out of which this action grew. After some reluctance Eshleman & Herr advanced for Bowers $800—in their note, and took his receipt, referring to their agreement. It was at this time the alleged promise was made. Up to this moment it is clear the relation of debtor and creditor between Bowers and the plaintiffs existed, and not between the defendants and them. How was the relation changed? The burden of proving a change of relation clearly and satisfactorily lay then on the plaintiffs; if not so proved, Bowers continued to be their debtor and the promise of the defendants was to pay his debt, and not being in writing, fell within the Statute of Frauds, 26th April 1855, sect. 1. This alternative was fairly presented to the jury in plain language, by the learned judge below. The only question, therefore, is, whether the evidence was sufficient to establish the change of relation, and make the defendants the principal debtors.

Bowers says, referring to the meeting to obtain the further advance of $800 : " They (defendants) gave him the note and told him to hurry on with the rest of the castings, to finish the eight hundred rakes." " I heard them tell Harnish to hurry up the balance," again, " at that time about two-thirds of the castings were finished. I ordered the goods to make the rakes, and they paid for them when they had the money. I sold the rakes and gave them orders to pay." Harnish testified to the same conversation as to the advance of $800 to Bowers. He says: " Before we parted there, they said we should hurry up the balance of the castings for the remainder of the rakes ; they would settle for the balance after they were delivered." Again, "they said I should hurry and deliver all the castings, and when they were all delivered they would settle and pay for the balance." Now in all this there was not a word expressing or even indicating a change of the relation between the plaintiffs and Bowers, or that the defendants took the

debt upon themselves as their own. When all was delivered they would settle and pay for the balance. Delivered to whom? Clearly to Bowers. They would settle and pay what? Clearly Bowers's debt. As a promise to pay, it was entirely consistent with their own relation to Bowers to advance him money to finish the eight hundred rakes. Harnish had not refused to continue to furnish the castings to Bowers. Then the plaintiffs gave their own interpretation to the promise of the defendants. They not only continued to furnish the castings to Bowers, but they charged them to him and company. It is evident Harnish thought the liability of the defendants grew out of thir agreement with Bowers. It was this *combination,* as he terms it, which caused him to add the sign *& Co.* to the charges in the book, and to continue the charges in that form.

But when a change of relation is alleged for the purpose of taking the case out of the Statute of Frauds, it lies upon the plaintiff to prove it by clear and indubitable evidence. The promise here must be attributed to the existing relations of the parties, in which Bowers was the purchaser of the castings from Harnish & Beecher, and Eshleman & Herr were mere loaning creditors of Bowers, under their written agreement and judgment against him. When the latter advanced the $800 they were reluctant and told Harnish they had advanced about all they were to under the agreement. Bowers was then becoming slow, and there is no probability that they would step out of their agreement and judgment to assume a new and worse relation; besides, there was a manifest reason for their expressions to Harnish to hurry up the castings. The eight hundred rakes were to be finished by the 1st of May, and this was the 9th of April. The season for making sales was rapidly approaching and the rakes should be in the market.

They were straining a point in raising the $800 for Harnish, and nothing was more natural when they were doing him a favor than to say to him now hurry up and we will settle the balance, without intending to change their position in the case. Their conduct was entirely consistent with existing relations, while there was nothing to justify the conclusion that they became the principal debtors of the plaintiffs. There was no sufficient evidence therefore to take the case out of the statute requiring a writing to answer for the debt in default of another.

We think there was error also in admitting the book of the plaintiffs as a book of original entries, to prove the charges for the castings. It was not competent evidence of the performance of a special contract with Eshleman & Herr, and could have been received only as a memorandum of the items, to refresh the memory of the witnesses.

Judgment reversed.