## Stouffer v. Jackson, Appellant.

*Statute of frauds—Promise to pay the debt of another—Evidence.*

1. An oral promise made by the owner of a building under construction to a material man to pay for material furnished in case the contractor made default in such payment, is void under the statute of frauds.

2. The evidence to prove a promise by one person to pay the debt of another as a new and original undertaking, and not a contract of suretyship, must be clear, precise and indubitable.

3. An owner of a building under construction cannot be held liable to a material man for material furnished where the evidence shows that the parties only contemplated that the owner would endeavor to pay the material man out of such sums of money as he might owe the contractor in case the latter completed the building in accordance with the contract.

Argued Oct. 28, 1909. Appeal, No. 101, Oct. T., 1909, by defendant, from judgment of C. P. Huntingdon Co., May T., 1908, No. 14, on verdict for plaintiff in case of Adam Stouffer v. Theodore Jackson. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Appeal from judgment of justice of the peace. Before WOODS, P. J.

The facts are stated in the opinion of the Superior Court.

Defendant presented the following points:

1. The testimony of plaintiff discloses the fact that the contract upon which the lumber was delivered, involved in this action, was made between himself and one I. M. Norris and not between himself and the defendant, and that at a time subsequent to the making of the contract the defendant made a verbal promise to him either to see that he was paid or to pay the bill, and there being no instrument in writing or memorandum charging the defendant under this contract, he is relieved by the statute of frauds and perjuries; and your verdict should be for defendant. *Answer:* Refused. [1]

2. The evidence on the part of the plaintiff does not dis-

close any contract agreement on the part of the defendant to pay plaintiff the bill for the lumber furnished, which is now sued for in this action, the plaintiff only showing that he said he would see that he was paid, and the claim is therefore barred by the statute of frauds and perjuries; and your verdict should be for defendant. *Answer:* Refused. [2]

3. The evidence in the case discloses the fact that the check which was testified to by the plaintiff as having been given him by the defendant, was not given to him or payable to his order, but was made payable to the order or contractor, I. M. Norris; thus confirming the fact that there was no promise on the part of the defendant to pay the bill for which suit is brought in this action; and your verdict should be for defendant. *Answer:* Refused. [3]

4. Under all the evidence in the case the verdict should be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $126.17. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Thomas F. Bailey,* for appellant.—Assuming the testimony of the plaintiff as to the several promises made to him by the defendant to be true, yet those promises were of such a character as to bring them directly within the operation of the statute of frauds and perjuries: Gable v. Graybill, 1 Pa. Superior Ct. 29; Lewis v. Lumber & Mfg. Co., 156 Pa. 217; Dougherty v. Bash, 167 Pa. 429; Rancil v. Krohne, 31 Pa. Superior Ct. 130; Putnam Machine Co. v. Cann & Saul, 173 Pa. 392; Riegelman v. Focht, 141 Pa. 380; Haverly v. Mercur, 78 Pa. 257; Eshleman v. Harnish, 76 Pa. 97.

*Richard W. Williamson,* for appellee.—A promise in form to pay or answer for the debt of another, which is accepted by the promisee in lieu of his claim against the original debtor so that the latter is extinguished, is not within the statute:

Maule v. Bucknell, 50 Pa. 39; Nugent v. Wolfe, 111 Pa. 471; Townsend v. Long, 77 Pa. 143; Elkin v. Timlin, 151 Pa. 491; May v. Walker, 20 Pa. Superior Ct. 580; Beard v. Heck, 13 Pa. Superior Ct. 390; Burr v. Mazer, 2 Pa. Superior Ct. 436.

OPINION BY MORRISON, J., April 18, 1910:

The facts in this case raise a question under the statute of frauds and perjuries (sec. 1, Act of April 26, 1855, P. L. 308): "That no action shall be brought . . . . whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person by him authorized."

While there are, in the record, four assignments of error, they only raise one question, to wit: the sufficiency of the plaintiff's testimony to take the alleged promise of the defendant out of the statute of frauds and perjuries. We will discuss this question, first, under the plaintiff's own version of the promise as disclosed by his own testimony. And second, is his testimony relied upon so clear, precise and indubitable as to take the case out of the statute by proving such a change of relation as to make what was originally the debt of Norris, that of the defendant, as an original undertaking and not as a collateral promise to pay the debt of Norris, if he did not pay it?

On October 26, 1907, the defendant entered into a contract with I. M. Norris to construct a dwelling house for him in the borough of Huntingdon. Norris began work on October 28, 1907, and on December 26 following, he was sold out by the sheriff. The plaintiff had a verbal contract with Norris to furnish the lumber for the house, and a considerable portion of the lumber had been furnished prior to the sale and the residue was furnished thereafter. All of this lumber was charged to Norris, and the bill or statement thereof, dated November 9, 1907, was made out by plaintiff against Norris and not against the defendant. There is not a particle of evidence that Norris was ever released from his liability to

pay for this lumber. The recovery in the court below was permitted on the theory that the defendant by a promise, testified to by the plaintiff, made himself the principal debtor to the plaintiff for the lumber. The testimony which the court below and the jury found sufficient to render the defendant liable to pay for the lumber, notwithstanding the statute of frauds, was given by the plaintiff, and we may here remark that it was precisely and clearly denied by the defendant. The plaintiff testified that he contracted with Norris to deliver the lumber and that after he had delivered a portion of it, he went to see the defendant and told him that Mr. Norris was no good financially and Mr. Jackson said these words, "I shall see that not one man loses a penny on anything that goes into my house." Again he testified: "He said he would see I was paid and I should make out the bill after I had the lumber in and he would pay it and I should get Mr. Norris to O. K. the bill, which I did." After the lumber was in he said he made a bill and submitted it to defendant, and he said take the bill up and have Mr. Norris O. K. it and I will pay it. This bill was from the account of the plaintiff against Norris. After the bill was O. K.'d by Norris, the undisputed evidence is that the defendant and Norris settled and a balance was found due Norris of $57.74, and the defendant, on January 4, 1908, wrote and mailed to the plaintiff the following: "Mr. Stouffer: I herewith enclose $57.74 to apply on your account. I hope to be able to help you out entirely before the job is finished. Yours, Theodore C. Jackson."

The plaintiff clearly testified that he made his contract to furnish the lumber in question with Mr. Norris about October 28, 1907; that the contract was verbal and it embraced what lumber it took for defendant's house. When asked to give the exact language used by the defendant in making the promise relied upon in this suit, the plaintiff testified: "Mr. Jackson said, I shall see that not one man shall lose a penny for material that goes into my building. You go ahead and put in the lumber and everything will be all right. I will see that you will be paid." Again he testified: "Q. Now what did Mr. Jackson say to you? A. He said exactly this:

he said he would take the money off Mr. Norris and pay me. Q. When did he say that to you? A. Well, the lumber was not half in." Again: "Q. Did you swear that Mr. Jackson had promised to assume this bill before the sheriff's sale? A. I did not say that he would assume it at any time; he said he would see it paid."

Now in reply to this testimony the defendant absolutely denied making any such promise to plaintiff. What he claimed to have promised was to undertake to get Norris to permit him to apply money which he might thereafter owe Norris to the payment of the plaintiff's lumber bill, and his testimony is uncontradicted that he did pay the balance he owed Norris to the plaintiff, to wit, $57.74, and that by reason of the death of Norris his contract was not completed and the defendant was not indebted to him or his estate thereafter.

The learned court below in what is called a decree, in the appellant's paper-book, cites and relies on several cases to justify submitting the case to the jury. But these cases have no bearing on the question, unless the evidence had shown that the defendant was indebted to Norris or had in his hands a fund in some manner furnished by Norris out of which the plaintiff's claim was to be paid by the defendant.

The cases cited by the court, which we say have no bearing on the present question, are Adams v. Kuehn, 119 Pa. 76; Delp v. Brewing Co., 123 Pa. 42; Sargent v. Johns, 206 Pa. 386. The latter case is not in point because as appears in Mr. Justice MITCHELL's opinion: "No question of the statute of frauds arises, for by the taking of the entire stock a consideration passed to defendants' and Alleman's creditors, though not parties to the contract, were parties to the consideration within the principles of Delp v. Bartholomay Brewing Co., 123 Pa. 42, and Adams v. Kuehn, 119 Pa. 76. Plaintiffs, therefore, as such creditors were entitled to sue in their own names if their claims were in fact within the consideration, or on the principle of estoppel if they were led to believe so, and to act upon such belief to their prejudice in reliance on a notice authorized or adopted by defendants."

The court also cites Burr v. Mazer, 2 Pa. Superior Ct. 436, and Kelly v. Baun, 6 Pa. Superior Ct. 327, but those cases on the facts before us, have no application. This case, under its facts, as testified to by the plaintiff, we think is controlled by Lewis v. Lumber and Mfg. Co., 156 Pa. 217, and kindred cases. In that case the question was whether the undertaking of the defendant was an original one making the claim a debt of its own, or was it a collateral undertaking to be liable for the debt or default of another. In that case the plaintiff was working for Avery peeling hemlock bark. The defendant lumber company was interested in a sense because Avery had a contract to peel the bark for it. The words relied on to make the defendant liable were these: "Keep on to work just as you have been to work, and we will see you paid." If you keep on to work for Avery just as you have been to work, we will be responsible for his promise to pay you. The latter sentence is the language of Mr. Justice WILLIAMS in expressing his view of the meaning of the above quoted words. The learned justice then says: "This was a collateral undertaking. It was an agreement to be liable for the debt or default of another. . . . This action is not brought for wages on an original contract of hiring, but for a balance due upon the plaintiff's contract with Avery. . . . If Avery had not made default the lumber company could under no circumstances have been made liable to the plaintiff. Because he has made default this suit is brought on a promise to be liable for such default. It is not easy to see how a case could be imagined that would fall more clearly under the statute than the one now before us."

So we say as to the present case. The plaintiff testified that he made a contract with Norris to furnish all of the lumber for the defendant's house and he furnished it and charged it to Norris and made his bill or statement of account against Norris, and the defendant only paid thereon the amount he owed Norris, after the latter had marked the bill O. K. The debt was the debt of Norris, and the undertaking of the defendant, as stated by the plaintiff himself, was to see that plaintiff's claim against Norris would be paid. If this was not

a collateral undertaking to pay the debt of another, then we fail to correctly interpret the testimony. We also cite Gable v. Graybill, 1 Pa. Superior Ct. 29, where President Judge RICE elaborately discussed the questions involved in a similar case. In that case it is said: "And when a change of relation is alleged for the purpose of taking the case out of the statute, it lies upon the plaintiff to prove it 'by clear and indubitable testimony:' Eshelman v. Harnish, 76 Pa. 97. The evidence to change an existing contract relation between the plaintiff and a third party, and to prove a promise by the defendant to pay the debt of another as a new and original undertaking, and not a contract of suretyship, must be clear and satisfactory: Haverly v. Mercur, 78 Pa. 257." We also refer to the numerous cases cited by Judge RICE in his opinion.

Our second proposition is that the testimony of the plaintiff is not so clear, precise and indubitable as to warrant the court in permitting a jury to find that the defendant was liable on a new and original undertaking to pay for the lumber in question. The plaintiff in his testimony falls short of such clear and precise testimony as the authorities require. In our opinion, taking his testimony and that of the defendant, and the writings in evidence, including the bill of lumber and the letter of the defendant of January 4, 1908, the only reasonable interpretation of the evidence is that the parties, at the time of the conversations testified to, only contemplated that the defendant would endeavor to pay the plaintiff for the lumber out of such sums of money as he might owe Norris in case he completed the house in accordance with the contract. But if we are wrong in this view, on no theory of the evidence can we find that the defendant undertook to do more than to pay the plaintiff for the lumber, in case Norris made default in such payment, and this oral promise, as we have seen, is void under the statute.

At the trial the learned court below overruled a point asking for a binding instruction in favor of the defendant and granted an exception and sealed a bill (fourth assignment). We sustain this assignment. Judgment reversed.