Kampman, Appellant, *v.* Pittsburgh Contracting & Engineering Co.

Argued October 3, 1934. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. M. Ewing,* for appellant.

*Oliver K. Eaton,* with him *William H. Coleman,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 26, 1934:

This suit was brought to recover the price of building materials for which plaintiff claims defendant is responsible by reason of the oral contract of one of its officers. The jury found in plaintiff's favor. The court entered judgment for defendant non obstante veredicto. Plaintiff appeals.

Defendant was the general contractor engaged in the construction of a theatre building. The plastering contract had been sublet by it to J. E. and W. E. Miller. The latter purchased materials from plaintiff, who testified that on November 6, 1928, he was doubtful of the ability of the Millers to pay for the materials they had ordered, $706 being then due for those already furnished. On the day named, plaintiff met Max Egerman, president and general manager of defendant, and told him he would sell no more materials to the Millers on their credit. Plaintiff asked Egerman if he would be responsible, and stated that otherwise deliveries would cease. Plaintiff testified that Egerman replied, "Well, we need the material to finish the job. I will see that you get paid for this material." Egerman denied that the conversation took place. A truck driver in plaintiff's employ who was present and overheard the conversation said that Egerman stated, "he would take care of the material from then on and see that he [plaintiff] was paid. Mr. Egerman said he would take care of it and he [plaintiff] would get paid for it." On further cross-examination, he qualified this by stating that Egerman said, "they was going to stand good for it."

The question for determination is whether the language attributed to Egerman is sufficient to constitute a contract between his company, the defendant, and plaintiff under which defendant became liable for the materials subsequently delivered to the Millers.

In the Restatement of the Law of Contracts, section 184, the prevailing law is thus stated: "Where the consideration for a promise that all or part of a previously existing duty of a third person to the promisee shall be satisfied is in fact or apparently desired by the promisor mainly for his own pecuniary or business advantage, rather than in order to benefit the third person, the promise is not within class II of section 178, [contracts with an obligee to answer to him for the debt, default or miscarriage of his obligor] unless the consideration is merely a premium for the promisor's insurance that the duty shall be discharged." This illustration is given: "D contracts with S to build a house for S. C contracts with D to furnish materials for the purpose. D, in violation of his contract with C fails to pay C for some of the materials furnished. C justifiably refuses to furnish further material. S orally promises C, that if C will continue to furnish D with materials that C had previously agreed to furnish, S will pay the price not only for the materials already furnished but also for the remaining materials if D fails to do so. S's promise is enforceable." It would seem that the instant case is stronger on its facts for recovery than the illustration. In the illustration, the promise of S was to pay *"if D fails to do so,"* which would seem to be closer to the inhibition of the statute of frauds than the language of the contract before us. There is not present here an undertaking to pay if the Millers did not. The undertaking is primary.

In Corcoran v. Huey, 231 Pa. 441, subcontractors who had dug a ditch were plaintiffs. Their evidence established that they entered upon their work and had partly proceeded with it. Having received no pay for the work done, they became doubtful of the ability of the contractor to meet its obligation to them. Plaintiffs decided to abandon their contract and communicated this fact to the defendants, who were financially interested in having the work completed. Defendants promised that if the plaintiffs would go on with their work, they (the defendants)

would pay for the work done and for the work to be done. Relying upon this promise, plaintiffs resumed operations and completed the work. The action was to recover from defendants on the alleged promise and recovery was sustained. The case came to this court on the question whether there was a variance between the pleadings and proof. We said, speaking through Mr. Justice STEWART (page 444) : "If the words 'we will see to it that you are paid' have a fixed legal meaning which so limits their force that only a secondary or collateral liability can be derived therefrom, then, inasmuch as the evidence which was asked to be stricken out, if believed, establishes a primary obligation, the motion to strike out should have prevailed; for the variance between the allegata and probata would in such case be obvious. But this cannot be affirmed. These words have no such certain, fixed meaning that the court could say as matter of law that they necessarily import the one kind of obligation rather than the other. Much depends on the connection in which they occur, and the circumstances attending their use. Cases are not wanting where the words 'will see you paid' have been held to imply a collateral undertaking to pay if the original promisor did not, and counsel for appellant have recited some in support of their contention; but neither are cases wanting where recovery has been allowed as on an original undertaking where the same words, or words equivalent, have been used. ...... If then the words set out in the statement of claim, on which the present action was based, were consistent with an original undertaking, no departure in the evidence from the exact language set out in the statement, so long as it introduced no different cause of action, could be held a variance."

It is difficult to see why, if a recovery in that case was permitted, there should not be one here. Appellee argues that the case at bar is to be distinguished from the Corcoran Case; that there plaintiff's evidence did not disclose that the labor was furnished on the credit of the

original promisor, whereas, in the instant case, plaintiff's own testimony showed that after the alleged oral promise he continued to bill the Miller firm for the debt and to press it for payment. The fact would seem to be that after the promise was made and after the work was completed, the plaintiff billed the Millers for it. We think this circumstance does not prevent plaintiff from recovering from defendant. Certainly it would not under the law as declared in the Restatement, because that contemplates an endeavor in the first instance to recover from the one originally liable.

It may reasonably be concluded that defendant had a purpose of its own to serve in keeping up the supply of materials to the job. If this be true, then the principle which underlies all cases similar to this and which was invoked in Kirby v. Kirby, 248 Pa. 117, applies, namely, that where the promise is to subserve some interest or purpose of the promisor, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute. It may be a little difficult to reconcile some of our own decisions, such as Lewis v. Lewis Lumber Mfg. Co., 156 Pa. 217, with the rule of law which we are here laying down. We are satisfied, however, that it is consistent with that applied in our two later cases and in the Restatement. We said in the Kirby Case (page 119) quoting from Nugent v. Wolfe, 111 Pa. 471, "It is difficult, if not impossible, to formulate a rule by which to determine in every case whether a promise relating to the debt or liability of a third person is or is not within the statute; but, as a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee, for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after, or at the time with the promise of the principal, is within the statute, and not binding unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the

effect is to pay or discharge the debt of another, his promise is not within the statute."

In the opinion entering judgment for the defendant, the court below says the case is a close one, but that in its judgment the weight of the testimony is in favor of the defendant; that there was no clear and satisfactory evidence warranting the submission of the plaintiff's case to the jury on the ground that there was an original promise on the part of the defendant to pay plaintiff for the materials which he supplied. We are unable to see the case in this light. The oral contract was denied, but the jury by its verdict has determined that it was made and made in the terms to which plaintiff testified. Unless we are to overthrow Corcoran v. Huey and to go counter to the Restatement, which we are not disposed to do, our conclusion must be that the case was for the jury.

Judgment reversed, with directions to the court below to enter judgment on the verdict in plaintiff's favor.