**JEFFERSON–TRAVIS, INC.**

v.

**GIANT EAGLE MARKETS, INC.,**
**Appellant.**

**No. 16543.**

United States Court of Appeals
Third Circuit.

Argued Oct. 17, 1967.

Decided April 8, 1968.

Leonard Boreman, Baskin, Boreman, Sachs & Craig, Pittsburgh, Pa. (Harold A. Gold, Pittsburgh, Pa., on the brief), for appellant.

James E. McLaughlin, McArdle & Mc-Laughlin, Pittsburgh, Pa. (Michael R. Stabile, Jr., Pittsburgh, Pa., on the brief), for appellees.

Before HASTIE, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

This appeal has been taken from a judgment on a jury verdict awarding a plaintiff, Jefferson-Travis, Inc., damages against Giant Eagle Markets, Inc. for breach of an oral contract. Federal jurisdiction is based solely upon diversity of citizenship and it is properly conceded that Pennsylvania law provides the rules and principles in accordance with which the issues in controversy should be decided.

The plaintiff is a wholesale distributor of appliances, including phonographs and radio and television sets. The defendant is an operator of supermarkets in west-

ern Pennsylvania. A third corporation, Discounts, Inc., is a retail seller of radio and television sets, phonographs and other appliances in western Pennsylvania.

The complaint alleges a contractual arrangement between Giant Eagle Markets and Discounts, Inc. under which the former "agreed to supply floor space in its stores so that Discounts, Inc., could sell appliances, such as television sets and phonographs, to Giant Eagle customers * * *." It is further alleged that Zolton Kaufman, the president of Discounts, Inc., sought to purchase appliances from the plaintiff on credit for sale in Giant Eagle stores under the arrangement between Discounts and Giant Eagle. The complaint continues that "acting in reliance on the verbal assurances of [certain Giant Eagle officers that they] * * * would make Giant Eagle responsible for all appliances sold in its stores, * * * the order of Discounts, Inc. was processed and * * * plaintiff began shipping appliances to Giant Eagle Markets, Inc. by way of Discounts, Inc. These appliances were sold in Giant Eagle stores pursuant to the exclusive sales agreement" between Discounts and Giant Eagle.

Among other defenses, Giant Eagle pleaded the statute of frauds, asserting that recovery is sought on its alleged verbal "special promise to answer for the debt of another, namely, Discounts, Inc." The defendant also pleaded the requirement of Section 2–201 of the Uniform Commercial Code, 12A P.S. § 2–201, that "a contract for the sale of goods" be evidenced by writing.

Because of differences between the provisions in the statute of frauds concerning promises to answer for the debt of another and the provisions concerning contracts of sale, it became relevant to determine at a pretrial conference upon what theory the plaintiff intended to proceed. Accordingly, at the pretrial conference, plaintiff's counsel, asked to clarify his client's position, said: "we will try to prove they made the promise, number one, to be bound, to back up this Discounts, Inc., which was a separate—

theoretically a separate entity, that they would stand behind them. Then prove that the benefits of this promise flowed directly or primarily to the defendants." The court then ruled that "we will treat it as being an oral promise to be responsible and to guaranty the debt of another", and added that the plaintiff would be permitted to contend and show if it could that the guarantee was "transmuted * * * into a direct obligation, if there is benefit shown." In addition, the court admonished that "if the plaintiff tries to prove anything beyond that, why, it will be considered as surprise." With the issue concerning the statute of frauds thus defined, the case went to trial.

The case was tried to a jury. There was evidence that from time to time before the transaction in suit the plaintiff had sold and delivered appliances to Discounts pursuant to the latter's purchase orders. However, Discounts fell in arrears on its obligations to pay for merchandise, thus creating a situation in which the plaintiff no longer was willing to place sole reliance upon Discounts' credit. Therefore, when Discounts proposed to purchase additional appliances for resale under its arrangement with and in the stores of Giant Eagle, the plaintiff according to its testimony, sought assurances of payment from Giant Eagle. A witness who had been the plaintiff's credit manager in Pittsburgh testified that an officer of Giant Eagle orally assured him: "You won't have to worry about the items sold in the Giant Eagle stores. We will pay for them." The witness stated further that this assurance was repeated in a telephone conversation. This was the only evidence of the promise upon which this suit was brought. The Giant Eagle employees who had talked with the plaintiff's witness categorically denied making any such promise.

There was testimony that, relying upon the alleged oral promise, the plaintiff honored Discounts' purchase orders and shipped appliances to Discounts. Some of these appliances were exhibited in Gi-

ant Eagle stores and sales were made there to Giant Eagle customers by Discounts' salesmen under the above arrangement between Giant Eagle and Discounts. That arrangement featured a a scheme under which a small percentage of the purchase price a customer paid to Giant Eagle for groceries would be credited, if the customer so requested, to his obligation to pay Discounts for any appliance he had purchased through a Discounts salesman in a Giant Eagle store.

About a month after this selling scheme became operative, Giant Eagle learned that the plaintiff was billing Discounts in the name of "Discounts, Inc., a division of Giant Eagle Markets." Giant Eagle promptly disavowed any such relationship as well as any liability for goods sold to Discounts. The recovery allowed in this case was for appliances sold and delivered by the plaintiff before that notification.

At the conclusion of the plaintiff's case and again after all of the evidence had been introduced, Giant Eagle moved for a directed verdict. After judgment, Giant Eagle moved for judgment in accordance with its earlier motions or for a new trial. These motions were denied.

In charging the jury, the court said nothing about the theory and contention that the agreement in suit was an oral guarantee. Instead, it presented the matter as simply a question whether the plaintiff and Giant Eagle had entered into an agreement for the plaintiff to sell and Giant Eagle to buy appliances. Thus, the court told the jury: "The only basis upon which this plaintiff can hold this defendant liable is for an alleged promise to pay for goods and merchandise that were sold at the Giant Eagle premises, in the Giant Eagle stores. You will notice that the course of dealing was to go through the Discounts' organization as an intermediary or selling agent." Again, the court charged that the verdict should be for the defendant if "there was no promise at all to pay," but for the plaintiff if there was "a promise to pay for goods that were sold * * * on the premises of Giant Eagle."

In objecting to the charge, counsel for the defendant said: "I object to the omission of the charge to any reference that the plaintiff is proceeding on an oral guarantee on the promise of Discounts. Despite the pre-trial ruling, despite the complaint, despite the evidence, your Honor has treated this as nothing more than a direct promise and has said nothing about what is involved here is an alleged oral guarantee on the promise of Discounts."

We have pointed out that the complaint alleges a contract to be responsible for the debt of another. It refers to the arrangement between Discounts and Giant Eagle as one under which Giant Eagle "agreed to supply floor space in its stores so that Discounts, Inc., could sell appliances." It is further alleged that "the order of Discounts, Inc. was processed in reliance on the verbal assurances of * * * [Giant Eagle officers that they] would make Giant Eagle responsible." If the pleadings left the nature of the claimed undertaking in doubt, that doubt was dispelled by the above quoted pre-trial ruling to the effect that the matter would be tried as a claim based on an oral promise to guarantee the debt of another with an open issue as to the existence and legal effect of any benefit to the guarantor.

In addition, the plaintiff's evidence was consistent with this definition of the claim and was insufficient to establish an enforceable contract of sale to Giant Eagle. The goods in question were ordered by Discounts, a retailer who already was one of the plaintiff's customers, and were delivered to Discounts. The plaintiff never promised to sell or deliver to Giant Eagle. Nothing in the evidence suggests that Giant Eagle ever obtained title to the merchandise sold to discounts.[1] The evidence as we read it does not support the characteriza-

---

1. Section 2–106 of the Uniform Commercial Code provides that "a sale consists in the passing of title from the seller to the buyer for a price."

tion of Discounts in the trial court's charge as "an intermediary or selling agent."

Giant Eagle's alleged promise was solicited by the plaintiff in an effort to protect itself in filling Discounts' order. The bargain in suit was at most a unilateral contract, with Giant Eagle promising to be responsible for payments for goods sold to Discounts and resold by the purchaser in space provided for that purpose in Giant Eagle stores. The promise became a binding unilateral contract, if at all, when merchandise sold by the plaintiff to Discounts was retailed by Discounts in Giant Eagle stores.

We conclude, therefore, that it was error to submit this case to the jury as a suit on a buyer's promise to pay for goods sold. The pretrial determination of the issues involved excluded this theory of liability and no evidence was introduced which would support it.

It remains to consider whether a new trial should be ordered to determine whether an oral guarantee was made and whether, if made, it was enforceable.

Our starting point is the provision of the Pennsylvania statute of frauds concerning guarantees:

"No action shall be brought whereby to * * * charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized." Act of April 26, 1855, P.L. 308, § 1, 33 P.S. § 3.

On its face this provision appears to bar recovery on the presently alleged oral promise. However, Pennsylvania Courts, like courts elsewhere, have encumbered the statute with judge-made doctrines and concepts in derogation of the stringency of the legislative text. One of these is the so-called "leading object rule." See, Corbin, Contracts, §§ 336–82; Restatement, Contracts, § 184. One of the early statements of the rule by the United States Supreme Court reads as follows:

"Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." Emerson v. Slater, 1859, 22 How. 28, 43, 16 L.Ed. 360.

This rule has been established and applied in a long line of Pennsylvania decisions. Eastern Wood Products Co. v. Metz, 1952, 370 Pa. 636, 89 A.2d 327; City of Philadelphia v. Rosin's Parking Lots, 1948, 358 Pa. 174, 56 A.2d 207; Kampman v. Pittsburgh Contracting & Engineering Co., 1934, 316 Pa. 502, 175 A. 396, 99 A.L.R. 76; Nugent v. Wolf, 1886, 111 Pa. 471, 4 A. 15; Frumkin v. Mayer, 1940, 139 Pa.Super. 139, 11 A.2d 767; and see Note, Oral Suretyship Contracts and the Leading Object Rule in Pennsylvania, 1939, 88 U.Pa.L.Rev. 208.

The appellant has argued that the rule applies only to promises predicated upon previously existing obligations and to situations in which the promise is an extinguishing substitute for the primary obligation. However, we do not read the Pennsylvania cases as imposing either of these limitations.

We have also considered whether there was evidence in this case upon which it could rationally be found that the dominant purpose of Giant Eagle in making the alleged promise to answer for the debt of Discounts was to advance its own economic interest, thus justifying the application of the leading object rule. We think there was such evidence. The alleged promise implemented an arrangement with Discounts which, from Giant Eagle's points of view, might well prove very valuable in attracting and holding customers for its grocery business.

Moreover, under the agreement with Discounts, Giant Eagle was to receive a small percentage of Discounts' receipts for appliances sold in Giant Eagle stores. These considerations strongly indicate that, if Giant Eagle gave an oral guarantee, it did so primarily to advance its own economic interest.

Finally, an important issue must be considered in connection with the fundamental dispute whether Giant Eagle made the alleged oral promise. We have already stated that only one witness testified that a representative of the defendant had promised that Giant Eagle would be responsible for payment for appliances sold in its stores. At the time in question he had been the local credit manager for the plaintiff. However, his employment had been terminated before the trial. He testified that the promise had been made once face to face and again in response to his telephonic inquiry. On the other hand, each of the Giant Eagle representatives with whom he had talked categorically denied any such promise. In addition, at the trial five years after the event, the plaintiff's witness could not remember precisely which Giant Eagle representative had made the first promise, and he was unable to recall many of the surrounding circumstances. Moreover, his testimony differed in some respects from his earlier depositions.

■ We do not agree with the defendant that in these circumstances the testimony of the plaintiff's witness should, as a matter of law, be disregarded. Rather, all circumstances affecting the credibility of the testimony offered by each party concerning the alleged promise were matters for jury consideration in determining credibility and thus resolving the factual dispute. Cf. Kampman v. Pittsburgh Contracting & Engineering Co., supra; Frumkin v. Mayer, supra; Corcoran v. Huey, 1911, 231 Pa. 441, 80 A. 881.

■ However, the fact that other witnesses categorically contradicted the plaintiff's witness to the making of the alleged promise and the presence of other circumstances which might have caused the jury to doubt the correctness of his testimony made a correct instruction concerning the burden of proof on this issue unusually important. The defendant requested and the court declined to give an instruction that the plaintiff's case must be supported by "clear and competent" proof. Instead, the court submitted the case to the jury as presenting the ordinary situation in which a plaintiff is entitled to prevail if, in the jury's view, his proof is in any degree more persuasive than that of the defendant.

■ As concerns the issue now being considered, this was error. Under Pennsylvania law, in those situations where recovery is permitted on an oral promise of guarantee, a higher degree of persuasion is required to establish that the alleged promise was in fact made than is required on the ordinary issues of a civil case. Haverly v. Mercur, 1875, 78 Pa. 257; Eshelman v. Harnish, 1874, 76 Pa. 97; Nazareth F. & M. Co. v. Beck, 1917, 66 Pa.Super. 238; Stouffer v. Jackson, 1910, 42 Pa.Super. 450; cf. Weightman v. Weightman, 1941, 342 Pa. 8, 20 A.2d 215 (proof of mutual mistake in an agreement).

Various adjectives have been used from time to time to characterize the proof required in civil cases on issues plaintiffs must establish by more than a preponderance of evidence but less than proof beyond reasonable doubt. "Clear", "convincing", "satisfactory", "precise" and even "indubitable" [2] appear frequently in the reports. In one such case, albeit on the issue of proving fraud, we approved the formula "clear and convincing proof" and described the plaintiff's burden as that of establishing his claim "by something impressively more than a slight preponderance of evidence." Valetti v. Commissioner of Internal Rev-

---

**2.** "Indubitable" seems misleading in that it connotes the criminal law's standard of proof beyond reasonable doubt. See

Greenberg v. Aetna Ins. Co., 1967, 427 Pa. 494, 235 A.2d 582.

enue, 3 Cir., 1958, 260 F.2d 185, 188. In the present case, the charge concerning proof of the alleged oral promise should have expressed that idea, though we do not require that every judge adopt the same formulation of the idea.

The judgment will be reversed and the cause remanded for a new trial in accordance with this opinion.