491 A.2d 882

THOMAS A. ARMBRUSTER, INC., A
Pennsylvania Corporation

v.

Eugene V. BARRON, Edward J. Ressler, Sr. and
Edward J. Ressler, Jr.

Appeal of Eugene V. BARRON.

Superior Court of Pennsylvania.

Argued Oct. 17, 1984.

Filed April 12, 1985.

410

Michael C. Deschler, Bethlehem, for appellant.

Henry S. Perkin, Allentown, for appellee.

Before CAVANAUGH, CIRILLO and JOHNSON, JJ.

CAVANAUGH, Judge:

Eugene V. Barron, appellant, and two others, were officers and sole shareholders in the RBR Corporation (hereinafter, RBR). The primary purpose of RBR was to construct a bowling alley. Each of the principals owned a one-third interest in the corporation. On March 6, 1979, Thomas A. Armbruster, Inc., a general contractor, entered into a construction agreement with RBR to build the bowling alley. On March 30th of the same year, Armbruster discovered that RBR did not own the land upon which the bowling alley was being constructed, and also that RBR had not yet obtained financing for the project. On May 14, 1979, during a meeting held at the office of Michael Prokup, Armbruster's attorney, Mr. Prokup requested Barron and one of the other principals to personally guarantee the corporation's debt in consideration of Armbruster's promise to proceed with construction. Barron offered to personally guarantee the corporation's debt and stated that he would put up his taproom as security. He expressed his belief that the corporation would receive financing in thirty to sixty days. The lower court found that attorney Prokup accepted Mr. Barron's offer of guaranty at the same meeting of May 14th.

Appellant Barron contends, among other things, that since the guaranty he allegedly made was oral, it is unenforceable due to the Statute of Frauds. 33 P.S. § 3 states:

## § 3. Promise to answer for debt of another

No action shall be brought whereby to charge any executor or administrator, upon any promise to answer damages out of his own estate, or whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized. 1855, April 26, P.L. 308, § 1.

Promises to pay the debt of another must be in writing for at least two reasons. The first is *evidentiary*. The second, *cautionary.*

Like other provisions of the statute [of frauds], the suretyship provision serves an evidentiary function. Indeed, Williston suggested that the circumstance that 'the promisor has received no benefit from the transaction ... may make perjury more likely, because while in the case of one who has received something the circumstances themselves which are capable of proof show probable liability, in the case of a guaranty nothing but the promise is of evidentiary value.' Furthermore, though in many instances the surety is paid by the principal for his undertaking, in others the surety's motivation is purely gratuitous and, 'as the lack of any benefit received by the guarantor increases the hardship of his being called upon to pay, it also increases the importance of being very sure that he is justly charged.'

In addition to its evidentiary role, the provision serves a cautionary function. By bringing home to the prospective surety the significance of his act, it guards against ill-considered action. Otherwise, he might lightly undertake the engagement, unwisely assuming that there is only a remote possibility that the principal will not perform his duty....

E.A. Farnsworth, *Contracts* § 6.3 (1982).

However, appellee argues that Barron's personal guaranty need not be in writing to be enforceable because it falls within a judicially created exception to the Statute of

Frauds called the "leading object" (or "main purpose") rule. The lower court agreed with this contention and held that the oral guaranty is enforceable. The leading object rule has been explained as follows: "Whenever the main purpose and object of the promisor, is, not to answer for [the debt of] another, but to subserve some pecuniary or business purpose of his own ... his promise is not within the statute [of frauds], although it may be in form a provision to pay the debt of another...." *Goodling v. Simon,* 54 Pa.Super. 125, 127 (1913). *See also Blumer v. Dorfman,* 447 Pa. 131, 289 A.2d 463 (1972); *Eastern Wood Products Co. v. Metz,* 370 Pa. 636, 89 A.2d 327 (1952). The rationale for this exception is as follows:

> Where the surety-promisor's main purpose is his own primary or business advantage, the gratuitous or sentimental element often present in suretyship is eliminated, the likelihood of disproportion in the values exchanged between promisor and promisee is reduced, and the commercial context commonly provides evidentiary safeguards. Thus there is less need for cautionary or evidentiary formality than in other cases of suretyship.

Restatement (Second) of Contracts § 116 comment a.

■ It is for us to determine if the lower court abused its discretion in holding that Barron's main purpose for making the guaranty was to serve his own pecuniary or business interests. We hold that it did not.

> The difficult question has been and continues to be: what is the test for determining when the promisor's promise is basically to benefit himself rather than to benefit and accommodate another? The formulations which have emanated from the many cases are invariably insufficient. Thus, where the promise is labelled an 'original obligation' rather than a collateral one, or where the promisor is called a 'debtor' rather than a surety, the courts are not supplying workable tests but are merely stating conclusions. The reason for the lack of success in formulating a test is that the question to be answered relates to the purpose, motive, object or desire of the

promisor and, therefore, it can only be answered by analyzing the complex of objective manifestations surrounding the making of the promises.

J. Murray, *Murray on Contracts* § 316 (2d ed. 1974).

■ The question of the promisor's purpose is best left to the trier of fact, the trial judge in this case. He is far better situated to weigh the evidence and judge the credibility of witnesses than is an appellate court, which has only the cold, lifeless record to guide it. *See Kampman v. Pittsburgh Contracting & Engineering Co.*, 316 Pa. 502, 175 A. 396 (1934). The lower court found that Barron and another of the three principals in the corporation promised to pay RBR's debts in order to protect their interests in the project. They had invested money to purchase the land and to obtain financing. According to the lower court, that money plus potential future profits would have been lost had the construction ceased. Thus, the court concluded that Barron's leading object in making the guaranty was to serve his own pecuniary purpose.

However, Barron argues that because he owned only 33⅓ % of the corporate shares, his main purpose in guaranteeing the corporation's debt was to serve the corporation's pecuniary interest, and not his own. In support of this, he cites *Acme Equipment Company v. Allegheny Steel Corporation*, 207 Pa.Super. 436, 217 A.2d 791 (1966). In *Acme*, Rudy Valentino, President and owner of 25% of Allegheny Steel Corporation stock, orally guaranteed a debt incurred by Allegheny. In determining Valentino's main purpose, the court reasoned as follows:

The only question raised by appellant is whether Valentino's promise was made not to answer for the debt of another but, primarily, to serve his own pecuniary interest as a stockholder and president of Allegheny. Although the above statute does not apply if the main object of the promisor is to serve his own pecuniary or business purpose, *Eastern Wood Products Company v. Metz*, 370 Pa. 636, 89 A.2d 327 (1952), the statute is not rendered inapplicable merely because a stockholder may

indirectly receive some gain when he promises to pay the debt of a corporation. In *Bayard v. Pennsylvania Knitting Mills Corp.*, 290 Pa. 79, 84, 137 A. 910, 912 (1927), the Supreme Court stated: "Ordinarily, the interest which a stockholder has is not individual, for he cannot be held for the corporate debts, and, if a promise to indemnify its creditor is made, the statute of frauds applies. * * The mere fact that such person is concerned in promoting the financial success of the company is not sufficient to justify the treating of the promise of guaranty as an original undertaking. * * * "

*Eastern Wood Products Company v. Metz,* supra, is distinguishable from the present case. In *Metz* the stockholder owned 100 per cent of the stock; his promise was clearly made to protect and benefit himself as the sole stockholder of the company. Valentino, however, is the owner of only 25 per cent of the stock of Allegheny. Such ownership, of itself, would not establish that the promise was made by Valentino for the main purpose of serving a pecuniary or business purpose of his own. Consequently, Valentino's alleged promise fell within the Statute of Frauds, and no action could be brought on it.

*Acme Equipment Company v. Allegheny Steel Corporation,* 207 Pa.Super. at 438–39, 217 A.2d at 792.

■ Applying the *Acme* court's rationale to the instant case, the fact that Barron was a 33⅓% owner of RBR does not, in and of itself, establish that his main purpose was to serve his own pecuniary interest. The percentage of a shareholder/guarantor's corporate ownership should never be the sole criteria employed to determine his main purpose in guaranteeing a debt incurred by his corporation. Significant scholarship has been afforded the question of what constitutes a shareholder's main purpose whenever he guarantees a debt incurred by his corporation.

Another cluster of cases involves promises by stockholders of corporations to pay corporate bills if promisees would continue to supply goods and services. These promises are motivated by the stockholders' own interests

and the leading object is to protect the value of the stock. Yet such promises are usually held to be within the Statute [of Frauds] *unless the benefit of the promisor can be shown to be special, direct and/or immediate.* J. Murray, *Murray on Contracts* § 316 (2d ed. 1974). (Emphasis added). Considering the same question, the eminent contract scholar Arthur Corbin wrote: "If the only expected gain to the promisor is in the protection of the value of his shares, the promise is held to be within the statute; but there are cases in which the promisor was found to have received a special benefit that constituted his 'leading object' and made him an original debtor." 2 A. Corbin, *Corbin on Contracts* § 372 (1950).

In the instant case, Barron's main purpose in guaranteeing RBR's debt was not merely to protect the value of his shares. The lower court found that he sought to protect his own personal financial interests in the project. This suggests that there was not great disproportion in the values exchanged by Barron and Armbruster, thus eliminating one important reason for requiring that the guaranty be in writing. As this was a business deal motivated by a desire to preserve a present investment and to insure future profits, the commercial context provides sufficient evidentiary and cautionary safeguards without requiring the guaranty to be in writing. The guaranty hardly seems to have been a gratuitous or sentimental gesture on Barron's part. Rather, it appears to have been motivated by a rational business judgment. Thus, an important reason for insisting that guarantees be in writing—that of insuring that the guarantor acted with deliberation—has no application to the instant case.

■ Moreover, the fact that RBR was a fledgling corporation in the embryonic stages of its development lends credence to our holding that this guaranty falls within the leading object rule. Barron's promise was not made merely to aid a proven business but to insure the very financial success of a new enterprise. Failure to give the requested guaranty may well have hindered RBR's chances of surviv-

al. Thus, the benefit Barron stood to receive from his guaranty was more immediate and direct than it would be were he a shareholder who guaranteed the debt of a more firmly established corporation. Furthermore, despite the fact that RBR was a separate *legal* entity, because of its fledgling status it is quite likely that Barron did not yet view it as having a life of its own, so dependent was it on his personal efforts. If Barron viewed the corporation as but a dependent extension of himself, an entity without life but for the financial aid he fed it, then *a fortiori*, the main purpose of his promise would have been to benefit himself, not "another". Such would not be the case where a shareholder guarantees the debt of a more firmly established corporation. In sum, the evils which the Statute of Frauds was designed to guard against are not present in this case and there is less need for the evidentiary and cautionary formalities than in other guaranty situations. *See* Restatement (Second) of Contracts § 116 comment a. We hold, therefore, that this case falls within the leading object rule and that the oral guaranty is not barred by the Statute of Frauds.[1]

■ Barron also alleges that there was a lack of assent and that, therefore, his guaranty is not binding on him. He contends, among other things, that the guaranty agreement was not unconditionally and absolutely accepted. On May 14, representatives of RBR and Armbruster met in the office of Armbruster's attorney, Michael Prokup. It was during this meeting that the personal guaranty was discussed. The lower court found that Barron made the offer to guaranty RBR's debt and that Mr. Prokup accepted it at this meeting. However, Barron now alleges that Prokup never accepted his guaranty offer and, in support of this, he

---

**1.** Appellant alleges that the lower court did not utilize the proper burden of proof in resolving the factual issue of whether or not an oral guaranty was given. The proper burden is that of clear and convincing evidence. *See Jefferson-Travis, Inc. v. Giant Eagle Markets, Inc.,* 393 F.2d 426 (3d Cir.1968). We find nothing in the lower court opinion to indicate that the lower court employed any burden other than the correct one.

418

points to a letter written on May 21, 1979 by Mr. Prokup to a representative of RBR, Barron's Corporation, which includes the following language:

Insofar as securing payment to Armbruster for the work that has been performed, Mr. Barron proposes to use his saloon in Bethlehem as security for the same. In that regard, I will need the following information: The exact names of the title holders for the real estate wherein the saloon is located, the exact address of the saloon; the names in which the liquor license and amusement permit have been registered; and the date of acquisition of the real estate and the liquor license. Upon receipt of this information, I shall prepare a Judgment Note to be signed by the title holders of the real estate for the amount of $18,000.00, and thereafter recorded to secure payment for work that has been done to date. By accepting this security for payment, however, it does not obligate Armbruster to go on with the project; rather, this security arrangement is only to guaranty payment of that work which has already been done by Armbruster. Any further construction work will be done only after we can be assured that your clients own the premises on Club Avenue and that adequate arrangements for construction financing have been made.

Barron contends that Mr. Prokup did not accept the guarantee either at the meeting of the fourteenth or by the letter of the twenty-first. According to Barron, Mr. Prokup merely requested information concerning the taproom which Barron had offered as security for the debt.

 It is a basic principle of the law of contracts that an acceptance must be unconditional and absolute. *Hedden v. Lupinsky*, 405 Pa. 609, 176 A.2d 406 (1962). "The question of whether a communication by an offeree is a conditional acceptance or counter-offer is not always easy to answer. It must be determined by the same common-sense process of interpretation that must be applied in so many other cases." 1 A. Corbin, *Corbin on Contracts* § 82 (1963). An alleged acceptance is not unconditional, and is

thus not an acceptance, if it alters "the terms of the offer in any material respect...." 1 A. Corbin, *Corbin on Contracts* § 82 (1963). We do not find that the letter materially altered the terms of the guaranty. Mr. Prokup's request for information in the letter of May 21 may be viewed not as a condition to his acceptance, but rather as a mere ministerial formality necessary to the performance of the contract and which was surely contemplated by the parties at the time of the agreement. "Where the facts are in dispute, the question of whether a contract was formed is for the jury to decide.... 'People do business in a very informal fashion, using abbreviated and elliptical language. A transaction is complete when the parties mean it to be complete. It is a mere matter of interpretation of their expressions to each other, a question of fact.' 1 A. Corbin, *Corbin on Contracts* § 29 (1963)." *Ingrassia Construction Company, Inc. v. John M. Walsh,* 337 Pa.Super. 58, 66, 486 A.2d 478, 482 (1984). We see no reason to disturb the lower court's finding that there was an acceptance by Armbruster in the instant case.

■ Barron also contends that essential terms were missing so as to render the contract fatally indefinite or incomplete. He argues that the guaranty was not unlimited and that he agreed to be personally liable only for that work which had been completed by May 14, 1979. Barron alleges that the extent of his monetary liabilities was limited to $18,000.00, an amount equivalent to the work done up until May 14, 1979. Appellant's contention appears to be borne out by the following portion of Mr. Prokup's letter of May 21: "[T]his security arrangement is only to guarantee payment of that work which has already been done by Armbruster." As an appellate court, however, we are reluctant to masquerade as trier of fact and attempt to determine whether Prokup's letter accurately states the terms to which the parties assented. Nor will we surmise what the parties agreed to based upon the cold, lifeless record before us. While the letter of May 21 may be of some evidentiary value, we are unable to discern its credible worth. The only

course open to us is to remand. If upon remand the lower court is able to determine the extent of Barron's monetary liability under the guaranty, then the contract should not be deemed fatally indefinite or incomplete as there would be a basis for fashioning a remedy.[2]

Therefore, we remand this case so that the lower court may determine the extent of Barron's monetary liability as it was agreed upon by the parties. We do not retain jurisdiction.

Case remanded for a determination of Barron's monetary liability.

2. Appellant alleges that the lower court erred in considering the testimony of a witness which was not transcribed. A trial judge may consider any evidence, even testimony which has been agreed not to be reproduced. He, of course, may not consider evidence which has been ordered stricken from the record. Appellant points to nothing in the record which would indicate that the testimony was ordered stricken from the record. The trial court chose to believe this witness, an employee of appellee, when he testified that Barron had not told him to stop work on the project. We shall not disturb this finding.