Acme Equipment Co., Inc., Appellant, *v.* Allegheny Steel Corporation.

Argued December 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Joseph R. Young,* with him *Butler, Beatty, Greer & Johnson,* for appellant.

*Charles F. Mayer,* for appellee.

OPINION BY HOFFMAN, J., March 24, 1966:

Appellant, Acme Equipment Co., Inc., distributes equipment for trucks and buses. On April 11, 1963, appellant ordered a product known as Formula T-308 and related equipment from Allegheny Steel Corporation [Allegheny]. The material was to be shipped on

open account, and the freight was to be prepaid. Payment was not to be made by appellant until a representative of Allegheny demonstrated that Formula T-308 effectively sealed large tires.

The materials, however, were shipped with sight drafts totalling $3,703.42. Upon being advised of this, appellant contacted appellee, Rudy Valentino, the president of Allegheny. Valentino allegedly said: "Go ahead and pay for it. I will take care of you if there is any problem. I will guarantee you won't lose a dime." The sight drafts were paid but the material proved unsatisfactory and was returned to Allegheny. Appellant's president testified that when he demanded a refund, Valentino advised him: ". . . [N]ot to worry, that he would see personally that I didn't lose any money." The money was never returned, and this action was filed against Allegheny and Valentino. The court below directed a verdict against Allegheny. A compulsory nonsuit was entered with respect to Valentino, however, on the ground that his promise was within the following section of the Statute of Frauds: "No action shall be brought . . . whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized." Act of April 26, 1855, P. L. 308, §1, 33 P.S. §3.

The only question raised by appellant is whether Valentino's promise was made not to answer for the debt of another but, primarily, to serve his own pecuniary interest as a stockholder and president of Allegheny. Although the above statute does not apply if the main object of the promisor is to serve his own pecuniary or business purpose, *Eastern Wood Products*

*Company v. Metz,* 370 Pa. 636, 89 A. 2d 327 (1952), the statute is not rendered inapplicable merely because a stockholder may indirectly receive some gain when he promises to pay the debt of a corporation. In *Bayard v. Pennsylvania Knitting Mills Corp.,* 290 Pa. 79, 84, 137 A. 910, 912 (1927), the Supreme Court stated: "Ordinarily, the interest which a stockholder has is not individual, for he cannot be held for the corporate debts, and, if a promise to indemnify its creditor is made, the statute of frauds applies. . . . The mere fact that such person is concerned in promoting the financial success of the company is not sufficient to justify the treating of the promise of guaranty as an original undertaking. . . ."

*Eastern Wood Products Company v. Metz,* supra, is distinguishable from the present case. In *Metz* the stockholder owned 100 per cent of the stock; his promise was clearly made to protect and benefit himself as the sole stockholder of the company. Valentino, however, is the owner of only 25 per cent of the stock of Allegheny. Such ownership, of itself, would not establish that the promise was made by Valentino for the main purpose of serving a pecuniary or business purpose of his own.[1] Consequently, Valentino's alleged promise fell within the Statute of Frauds, and no action could be brought on it.

Order affirmed.

---

[1] *Philadelphia v. Rosin's Parking Lots, Inc.,* 358 Pa. 174, 56 A. 2d 207 (1948), which is cited by appellant, must also be distinguished from the present case. The Court's ruling there was based on the premise that the individuals involved may have made the oral agreement in order to save themselves from judgment and execution. The court said at page 179: "If it appears that they made this agreement to save themselves from judgment and execution in the circumstances referred to in the brief, it may be an original undertaking."