674 A.2d 723

WEBB MANUFACTURING COMPANY, Appellant,

v.

Larry SINOFF and Brad Sinoff, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 27, 1996.

Filed April 10, 1996.

Daniel J. Hetznecker, Merion Station, for appellant.

Richard S. Glassman, Philadelphia, for Larry Sinoff, appellee.

Before BECK, HUDOCK and JAMIESON *, JJ.

HUDOCK, Judge:

Webb Manufacturing Company appeals from the July 5, 1995 order which granted Larry Sinoff and Brad Sinoff's preliminary objections in the nature of a demurrer and dismissed its complaint with prejudice. We reverse.

* This decision was reached prior to the retirement of Judge Jamieson.

This case commenced on September 30, 1994 when Webb Manufacturing Company (Webb) filed a complaint alleging that Brad Sinoff and Larry Sinoff (Sinoffs), on behalf of Apple Marketing, entered a contract to purchase goods and services. Webb averred that Sinoffs "in their capacity as principles [sic] of Apple Marketing" guaranteed to pay for the goods and services supplied by Webb in the event that Apple Marketing could not pay for them. Webb further averred that Sinoffs guaranteed the payment for the goods and services to induce Webb to enter such contract. Webb claimed that without Sinoffs' personal guarantee, it would not have agreed to ship the goods to Apple Marketing.

On April 7, 1995, Sinoffs filed preliminary objections in the nature of a demurrer claiming that Webb's claim was barred by the Statute of Frauds, 33 P.S. section 3. Sinoffs also claimed that Webb could not recover against them individually since they conspicuously entered the contract in their capacity as agents of Apple Marketing.[1]

On May 5, 1995, Webb filed an amended complaint raising two additional counts; one averring that Sinoffs were unjustly enriched and one seeking to pierce the corporate veil of Apple Marketing. In response to the amended complaint Sinoffs filed a motion to strike the amended complaint or in the alternative a preliminary objection in the nature of a demurrer. Sinoffs requested the court to strike the amended complaint since it was not timely filed within the required twenty-

---

1. Pa.R.C.P. 1030(a), 42 Pa.C.S.A., provides that the affirmative defense of the Statute of Frauds "shall be pleaded in a responsive pleading under the heading 'New Matter'." Furthermore, the official "Note" to Pa.R.C.P. 1028(4) specifically states: "The defense of the bar of a statute of frauds or statute of limitations can be asserted only in a responsive pleading as new matter under Rule 1030." Sinoffs erred by raising the statute of frauds defense in a preliminary objection. They should have raised the defense in new matter and the trial court should have dismissed the preliminary objection in the nature of a demurrer on the grounds that the statute of frauds defense was improperly raised. If the parties adhered to the procedural rules, Sinoffs would have raised the affirmative defense in their new matter. Webb would then have had the opportunity to raise the leading object exception in its reply to new matter. Neither party has raised this procedural error or challenged the trial court's grant of the demurrer on this basis. We will therefore not reverse the trial court's order on this basis.

day period following service of their preliminary objections. *See* Pa.R.C.P. 1028(c)(1) (party may file an amended complaint as of course within twenty days after service of preliminary objections). In the alternative Sinoffs requested the court to grant their demurrer based on the failure of Webb to comply with the Statute of Frauds.

On June 2, 1995, a panel of arbitrators found in favor of Webb and awarded it a judgment of $7,103.20 plus interest. Sinoffs appealed this decision to the Court of Common Pleas and on July 5, 1995, the trial court sustained Sinoffs' demurrer and dismissed the complaint with prejudice. The trial court sustained Sinoffs' preliminary objections on two grounds: (1) Webb's complaint failed to attach a written guarantee or contract wherein Sinoffs agreed to pay a debt of Apple Marketing as required by the Statute of Frauds, and (2) Webb could not recover against Sinoffs individually since they contracted with Webb as agents of Apple Marketing.

Webb raises two questions for our review: Did the trial court err by sustaining Sinoffs' demurrer, and should the trial court have addressed the allegations raised in its amended complaint?

When faced with a preliminary objection in the nature of a demurrer, the court must accept as true all well-pleaded facts contained in the plaintiff's complaint along with every reasonable inference which may be drawn therefrom. *Al Hamilton Contracting Company v. Cowder,* 434 Pa.Super. 491, 495–97, 644 A.2d 188, 190 (1994). A demurrer can only be sustained if the complaint is clearly insufficient to establish the plaintiff's right to relief. *Bash v. Bell Telephone Company of Pennsylvania,* 411 Pa.Super. 347, 352–54, 601 A.2d 825, 828 (1992).

Applying these standards we must determine whether Webb's complaint sufficiently pled a viable cause of action against Sinoffs. The trial court concluded that Webb could not recover from Sinoffs in their personal capacity because it "failed to produce any written promise by [Sinoffs] to pay the debt of Apple Marketing[ ]" and thus failed to meet the

requirements of the Statute of Frauds. Trial Court Opinion, 9/26/95, at p. 2. Without evidence that Sinoffs executed a written agreement to personally answer for the debt of Apple Marketing, the trial court concluded that Webb's breach of contract claim was unenforceable under the Statute of Frauds.

The pertinent provision of the Pennsylvania Statute of Frauds is found at 33 P.S. section 3, which provides in pertinent part:

> No action shall be brought ... whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized.

33 P.S. § 3.

We have previously explained the purpose of this rule:

> Promises to pay the debt of another must be in writing for at least two reasons. The first is *evidentiary*. The second, *cautionary*.

> > Like other provisions of the statute [of frauds], the suretyship provision serves an evidentiary function. Indeed, Williston suggested that the circumstance that 'the promisor has received no benefit from the transaction ... may make perjury more likely, because while in the case of one who has received something the circumstances themselves which are capable of proof show probable liability, in the case of a guaranty nothing but the promise is of evidentiary value.' Furthermore, though in many instances the surety is paid by the principal for his undertaking, in others the surety's motivation is purely gratuitous and, 'as the lack of any benefit received by the guarantor increases the hardship of his being called upon to pay, it also increases the importance of being very sure that he is justly charged.'

> > In addition to its evidentiary role, the provision serves a cautionary function. By bringing home to the prospective surety the significance of his act, it guards against ill-

considered action. Otherwise, he might lightly undertake the engagement, unwisely assuming that there is only a remote possibility that the principal will not perform his duty....

E.A. Farnsworth, Contracts § 6.3 (1982).

*Thomas A. Armbruster, Inc. v. Barron,* 341 Pa.Super. 409, 412, 491 A.2d 882, 883–84 (1985) (emphasis in original).

■ The suretyship provision of the Statute of Frauds is a nonwaivable affirmative defense which may serve as the basis for a demurrer and a judgment on the pleadings. *Blumer v. Dorfman,* 447 Pa. 131, 134–38, 289 A.2d 463, 466–67 (1972).

■ The suretyship provision of the Statute of Frauds, however, does not apply if the main object of the promisor is to serve his own pecuniary or business purpose. *Biller v. Ziegler,* 406 Pa.Super. 1, 8–10, 593 A.2d 436, 440 (1991); *See Eastern Wood Products Company v. Metz,* 370 Pa. 636, 641, 89 A.2d 327, 330 (1952) (Supreme Court adopts exception to suretyship provision of the Statute of Frauds). This exception, known as the "leading object" or "main purpose" rule, "applies whenever a promisor, in order to advance some pecuniary or business purpose of his own, purports to enter into an oral agreement even though that agreement may be in the form of a provision to pay the debt of another." *Biller,* 593 A.2d at 440. The Restatement (Second) of Contracts explains the rationale of this exception:

Where the surety-promisor's main purpose is his own primary or business advantage, the gratuitous or sentimental element often present in suretyship is eliminated, the likelihood of disproportion in the values exchanged between promisor and promisee is reduced, and the commercial context commonly provides evidentiary safeguards. Thus there is less need for cautionary or evidentiary formality than in other cases of suretyship.

Restatement (Second) of Contracts § 116, Comment a; *Thomas A. Armbruster, Inc.,* 491 A.2d at 884.

■ The trier of fact, who is better able to weigh the evidence and assess the credibility of witnesses, must deter-

mine whether a promisor's main purpose for making a guaranty was to serve his own pecuniary or business ends. *Id.* Case law in this Commonwealth has not provided a bright line test to determine if the promisor made an oral guarantee for his own pecuniary or business interest. *Id.* We have previously explained:

> The difficult question has been and continues to be: what is the test for determining when the promisor's promise is basically to benefit himself rather than to benefit and accommodate another? The formulations which have emanated from the many cases are invariably insufficient. Thus, where the promise is labelled an 'original obligation' rather than a collateral one, or where the promisor is called a 'debtor' rather than a surety, the courts are not supplying workable tests but are merely stating conclusions. The reason for the lack of success in formulating a test is that the question to be answered relates to the purpose, motive, object or desire of the promisor and, therefore, it can only be answered by analyzing the complex of objective manifestations surrounding the making of the promises.

J. Murray, *Murray on Contracts* § 316 (2d ed. 1974).

*Armbruster, Inc.,* 491 A.2d at 884.

In cases where the promisor is a shareholder or officer of a corporation whose debt he has personally guaranteed, courts consider the percentage of the shareholder/guarantor's corporate ownership as a significant, although not sole criteria. *Id.* at 885. For example, in *Acme Equipment Company Inc. v. Allegheny Steel Corporation,* 207 Pa.Super. 436, 217 A.2d 791 (1966), Rudy Valentino, the President and owner of 25% of Allegheny Steel Corporation, orally guaranteed to Acme Equipment Company that he would pay the debt incurred by Allegheny. *Id.* 217 A.2d at 792. When Acme attempted to enforce the oral guarantee, the trial court entered a compulsory nonsuit in favor of Valentino since the promise fell within the Statute of Frauds. On appeal, this Court examined whether Valentino made the promise for his own pecuniary interest. We explained:

Although the [Statute of Frauds] does not apply if the main object of the promisor is to serve his own pecuniary or business purpose, ... the statute is not rendered inapplicable merely because a stockholder may indirectly receive some gain when he promises to pay the debt of a corporation. In *Bayard v. Pennsylvania Knitting Mills Corp.*, 290 Pa. 79, 84, 137 A. 910, 912 (1927), the Supreme Court stated: "Ordinarily, the interest which a stockholder has is not individual, for he cannot be held for the corporate debts, and, if a promise to indemnify its creditor is made, the statute of frauds applies. * * * The mere fact that such person is concerned in promoting the financial success of the company is not sufficient to justify the treating of the promise of guaranty as an original undertaking. * * *"

*Acme Equipment Co.*, 217 A.2d at 792.

In *Acme*, we distinguished *Eastern Wood Products Company v. Metz, supra,* where the promisor owned 100% of the stock of the corporation whose debt he guaranteed. In that case, we found that the promisor made the oral guarantee to protect and benefit himself as the sole stockholder of the company. *Acme,* 217 A.2d at 792. In *Acme,* however, we concluded that Valentino's 25% ownership in Allegheny in itself did not establish that Valentino's main purpose in making the oral guarantee was to serve his own pecuniary or business interest. *Id.*

■ In the present case the trial court did not consider whether the Sinoffs made the alleged oral guarantee for their own pecuniary or business ends. The court concluded that Webb admitted in paragraph 8 of its complaint that it contracted with Apple Marketing and not Sinoffs in their individual capacity. Paragraph 8 of Webb's complaint read:

8. [Appellees] Larry Sinoff and Brad Sinoff, **in their capacity as principles [sic] of Apple Marketing,** guaranteed the above-referenced bill in the event that Apple Marketing did not pay for said goods and/or services as was agreed.

Webb's Complaint, at p. 2 (emphasis added). The trial court concluded that the "leading object" exception did not apply as

a matter of law since Webb averred in paragraph eight that Sinoffs acted in their capacity as principals of Apple Marketing.

Webb asserts that the court placed too much emphasis on the words "in their capacity as principles [sic] of Apple Marketing" found in paragraph eight of its complaint. Webb clarifies that when it referred to Sinoffs as principals, it meant those individuals with authority to act on behalf of Apple. Webb's Brief, at p. 15. Webb argues that the trial court ignored other averments in its complaint which made it clear that the alleged guarantee made by Sinoffs was "a personal one and amounted to an agent's agreement to assume liability." Webb's Brief, at p. 15.

After examining the complaint in its entirety, we find Webb pled sufficient facts to raise the "leading object" exception to the Statute of Frauds, thus preventing the entry of a demurrer. Webb averred that Sinoffs made the guarantee "in the event that Apple Marketing did not pay for said goods and/or services as was agreed." Webb's Complaint, ¶ 8. Webb further averred that: "[Sinoffs] guaranteed the above-referenced bill in order to induce [Appellant] Webb Manufacturing to sell said goods and/or services to Apple Marketing." Webb's Complaint, ¶ 9. Cognizant of the standard that a demurrer may only be sustained when it is clear and free from doubt that the law will not permit recovery by the plaintiff upon the facts averred in the complaint, and that all doubts must be resolved against granting the demurrer, we find that the trial court erred in granting Sinoffs' demurrer. *Pekular v. Eich*, 355 Pa.Super. 276, 279–81, 513 A.2d 427, 429 (1986), *alloc. den.*, 516 Pa. 635, 533 A.2d 93 (1987). Accepting as true Webb's averment that it would not have sold Apple Marketing goods and services without Sinoffs' personal guarantee, Webb asserted sufficient facts to raise the "leading object" exception to the Statute of Frauds. If further facts are adduced when the parties replead or during discovery or at trial which prove that Sinoffs guaranteed Apple Marketing's debts for their personal benefit, Webb may prevent the lack of a written agreement and the Statute of Frauds from barring its ability

to enforce the oral agreement. We find the facts of *Grant R. Wright, Inc. v. Haworth Energy Resources, Inc.*, 337 Pa.Super. 115, 486 A.2d 507 (1984), analogous. In that case the trial court granted a demurrer and dismissed the allegation of personal liability against the appellee-defendant Carl W. Householder, the president of and 52% shareholder in Haworth Energy Resources. The appellant-plaintiff supplied coal to Haworth and claimed that Haworth owed it a debt of $36,800. The appellant further averred in Count two of its complaint that Carl Householder, as an agent or broker for Lockport Paperboard Corporation, orally agreed to be personally liable for future coal shipments to Lockport and for Haworth's present obligations. The trial court found that this alleged oral agreement was a suretyship contract which is unenforceable unless in writing. On appeal, we reversed finding that there was insufficient evidence to determine whether Householder made the guarantee for his personal benefit thus implicating the "leading object" exception to the Statute of Frauds. *Id.*, 486 A.2d at 509. We reasoned:

> We feel that the amount of appellee Householder's financial interest in the Haworth Corporation, coupled with that of his son, requires the further elucidation of the circumstances in this case.
>
> It is entirely possible that no exception to the Statute [of Frauds] can be shown from evidence adduced at trial, but we hold, as did the Pennsylvania Supreme Court in [*Blumer v. Dorfman, supra* ], that the defense of the Statute, without more, should not have been made the basis for a judgment on the pleadings.

*Id.* (citations omitted).

This analysis applies to the present case. The trial court should not have dismissed Webb's complaint with prejudice when there was insufficient evidence as to Sinoffs' motive in making the alleged oral guarantee to pay Apple Marketing's debt.[2] We recognize, as we did in *Grant R. Wright, Inc. v.*

2. It is unclear from the record what the Sinoffs' ownership interest is in Apple Marketing. This evidence is clearly relevant to the trial court's

*Haworth Energy Resources, Inc., supra,* that Webb may be unable to prove that the leading object exception applies in this case at the time of trial. However, at this stage of the proceedings, we find that the trial court should not have granted Sinoffs' demurrer on the basis of the Statute of Frauds when there were sufficient facts pled to raise the defense.[3]

Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

JAMIESON, J. files a Concurring Statement.

JAMIESON, Judge, concurring.

I join in the Opinion authored by Judge Hudock. I write separately only to emphasize the point addressed in footnote one of Judge Hudock's Opinion, to wit: had the parties and the trial court adhered to Rules 1028 and 1030 of the Pennsylvania Rules of Civil Procedure, a great deal of time and energy would have been conserved. Moreover, the extended analysis utilized by Judge Hudock, which of necessity examines case law dependent upon the resolution of factual questions, amply illustrates the wisdom of requiring affirmative defenses to be pled as new matter; for affirmative defenses generally require a trial court to resolve factual disputes. On the other hand, in filing a demurrer the moving parties agree to accept the factual statements as pleaded. *See generally Williams v. Gruntal & Co.,* 447 Pa.Super. 357, 669 A.2d 387 (1995). In this case, the chosen procedural posture left critical facts unresolved which must now be determined on record.

determination of the parties' main purpose in guaranteeing Apple Marketing's debt.

3. Because of our disposition of this claim, we do not have to address Webb's second argument that the trial court should have examined the allegations raised in its amended complaint.