# Widdoss v. Huffman

C.P. of Monroe County, no. 7340 Civil 2002.

*John Philip Diefenderfer,* for plaintiff.
*James M. Howley,* for defendant Huffman.
*C. Tyler Havey,* for defendant Vivendi Universal.
*Thomas J. Kelly,* for defendant Foxmoor Cinema.
*Anthony J. Piazza,* for defendant Loews Corporation.

WALLACH MILLER, *J.,* June 10, 2003—On January 23, 2001, at about 11:30 p.m., plaintiff, Robert Widdoss Jr., was driving north in the northbound lane of Route 447 in Stroud Township, Monroe County when he was hit head-on by a southbound Honda Civic driven by Dale Lockard. The Honda Civic was owned by Steve Ayers, who was a passenger in the car at the time. Both Ayers and Lockard were killed as a result of the crash. Plaintiff suffered serious injuries in this accident.

Plaintiff alleges that Ayers and Lockard were racing with defendant Daniel Huffman at the time.

Prior to and on the day of the accident, a movie, "The Fast and the Furious," was shown in Monroe County. The plaintiff alleges that Ayers, Lockard, and Huffman saw this movie at either Foxmoor Cinema or Loews Cineplex. The complaint further alleges that all or some of a group of young men, including Ayers, Lockard, and Huffman, were racing their cars to imitate the movie.

In Count II of his amended complaint, the plaintiff alleges the following against defendants Vivendi Universal, Foxmoor Cinemas Inc., and Loews Cineplex Entertainment Corporation Inc. (corporate defendants):

"(21) The defendants, Huffman, Lockard and Ayers, in violation of Pennsylvania Statute 75 Pa.C.S. §3367 [b], without a permit to do so, engaged in an automobile race on Pa. Route 447, in Stroud Township, and committed the crime[s] of involuntary manslaughter, and homicide [2] by vehicle, [the deaths of Lockard and Ayers], in violation of 75 Pa.C.S. §3732, and §3736, by wanton and willful reckless driving, misdemeanors of the first degree.

"(22) The defendant Universal and the defendant theaters therefore are by statute an accomplice to the aforesaid criminal conduct of Lockard, Ayers and Huffman, in violation of 18 Pa.C.S. §306, being Act of Assembly 1972 December 6, P.L. 1482 no. 334 section 1."

The corporate defendants have filed preliminary objections in the nature of a demurrer to plaintiff's amended complaint. We heard oral argument on May 5, 2003, and after a review of the parties' briefs, we are ready to dispose of the matter.

When considering preliminary objections in the nature of a demurrer, the court must accept as true all of the well-pleaded material facts in the complaint and all of the reasonable inferences which may be derived therefrom. *Webb Manufacturing Co. v. Sinoff,* 449 Pa. Super. 534, 674 A.2d 723 (1996). Preliminary objections in the nature of a demurrer should only be sustained when it is certain that the law permits no recovery under the alle-

gations pleaded. *Green v. Mizner,* 692 A.2d 169 (Pa. Super. 1997). A complaint which consists of argumentative conclusions as opposed to properly pleaded statements of fact cannot withstand a demurrer for failure to set forth an action of claim. *Division 85 of Amalgamated Transit Union v. Port Authority,* 71 Pa. Commw. 600, 455 A.2d 1265 (1983).

In reading the plaintiff's amended complaint, his theory in Count II against the corporate defendants appears to be that they produced, distributed, and exhibited a movie directed to impressionable young males who upon watching it would go out and commit criminal conduct, *i.e.,* street racing. That defendant Huffman along with Ayers, Lockard, and others saw the movie at one of the two defendant theaters and sometime after viewing the movie, raced their cars causing the accident. The theory of Count II of the complaint, while not clear, appears to be based on negligence of the corporate defendants for producing, distributing and exhibiting this film and in doing so they became criminal aiders and abetters to the alleged criminal conduct of Lockard, Ayers and Huffman.[1] Specifically, Count II alleges that the corporate defendants produced, distributed, and showed "The Fast and the Furious" so that its content would incite viewers to commit violence in imitation of the violence in the film.

The corporate defendants argue that the amended complaint is legally insufficient and that the contents of the film are protected by the First Amendment of the United

---

1. The plaintiff does not allege that any criminal charges were filed against defendant Huffman, and our criminal court dockets do not list him as a defendant in any criminal matter.

States Constitution. During oral argument, in response to a question from the court, plaintiff's counsel told us that his amended complaint is attempting to advance a claim under the free speech exception set out in *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).

Thus, the issues before the court are the interplay between the allegations of negligence and the guarantees of free speech under our constitution. We could not find any Pennsylvania cases surrounding negligent production, distribution, or exhibition of a movie. We did, however, find guidance in other jurisdictions. See *Yakubowicz v. Paramount Pictures Corp.,* 536 N.E.2d 1067 (Mass. 1989); *Bell v. Superior Court,* 187 Cal. Rptr. 625 (Cal. 1982); *Zamora v. CBS,* 480 F. Supp. 199 (S.D. Fla. 1979); *Olivia N. v. NBC,* 178 Cal. Rptr. 888 (Cal. 1982); *Byers v. Edmonson,* 826 So.2d 551 (La. App. 2002).

There can be negligence only where there is a duty to be careful, *Ney v. Axelrod,* 723 A.2d 719 (Pa. Super. 1999), and whether a duty exists under a particular set of facts is a question of law. In determining whether the law ought to provide that a duty of care is owed by one person to another, we look to existing social values and customs, and to appropriate social policy. *Campo v. St. Luke's Hospital,* 755 A.2d 20 (Pa. Super. 2000). A basic principle of negligence law is that ordinarily everyone has a duty to refrain from affirmative acts that unreasonably expose others to a risk of harm. Thus, Pennsylvania has held that a keeper of a tavern owes to travelers on the highway a duty of care with respect to the furnishing of alcoholic beverages to its customers. *Fink v. Garman,*

40 Pa. 95 (1861). And a proprietor of a supermarket owes a duty of care to its customers with respect to leaving a substance on the floor that may cause its patrons to slip and be injured. *Moultrey v. Great A & P Tea Co.,* 281 Pa. Super. 525, 422 A.2d 593 (1980). In keeping with that principle, we can find that the corporate defendants owed a duty of reasonable care to members of the public, including the plaintiff, with respect to the producing, distributing, and exhibiting of this movie.

The next question is whether there is a properly pled fact with respect to whether that duty was violated. In reference to Count II of plaintiff's amended complaint alleging negligence in the production, distribution, and exhibiting of "The Fast and the Furious," we conclude that as a matter of law there is not. This conclusion follows from the First Amendment to the United States Constitution that motion pictures are a significant medium for the communication of ideas. *Joseph Burstyn Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). They are protected by the First Amendment just like other forms of expression. *Id.* at 502, 72 S.Ct. at 780. It is immaterial for First Amendment purposes whether speech is suppressed under the criminal law or by "penalties" imposed by tort law. See *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 686 (1964). Although freedom of speech is not absolute, and liability may exist for tortious conduct in the form of speech, the recognized exceptions to First Amendment protection are narrowly defined and do not reach "The Fast and the Furious." We conclude that the defendants could not properly be found to have violated their duty

of reasonable care by exercising protected rights of free speech.

The plaintiff contends that "The Fast and the Furious" falls within the incitement exception to First Amendment protection. This exception applies to speech which advocates "the use of force or of law violation . . . where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg, supra.* But speech does not lose its First Amendment protection merely because it has "a tendency to lead to violence." *Hess v. Indiana,* 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973).

In his complaint and amended complaint, plaintiff does not provide as with any information that the film urges, solicits, or overtly advocates unlawful or violent activity on the part of the viewers. He merely makes conclusory statements that this is so. He does not point us to any specific parts of the movie, either action or dialogue, that purport to order or command anyone to any concrete action at any specific time, much less immediately. See *McCullum v. CVS Inc.,* 202 Cal. App. 3d 989, 249 Cal. Rptr. 187 (1988). Therefore, we find that the plaintiff has not alleged any facts that the corporate defendants breached a duty in producing, distributing, and exhibiting "The Fast and the Furious," because such expression is protected by the First Amendment.

The plaintiff has failed to specifically plead a cause of action, both in his complaint and in his amended complaint. Therefore, the defendants' demurrers are sustained and we enter the following order.

258

## ORDER

And now, June 10, 2003, the preliminary objections of defendants Vivendi Universal, a/k/a Universal Studios Vivendi Universal, a/k/a Universal Studios, Foxmoor Cinemas Inc. and Loews Cineplex Entertainment Corporation Inc. are sustained and the amended complaint is dismissed as against those defendants with prejudice.