J-A10020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BOLLARD & ASSOCIATES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| H&R INDUSTRIES, INC. AND HARRY SCHMIDT | |
| APPEAL OF: HARRY SCHMIDT | |
| | No. 1038 EDA 2016 |

Appeal from the Judgment Entered February 11, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2010-33146

BEFORE: DUBOW, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SOLANO, J.:                    **FILED OCTOBER 24, 2017**

Appellant Harry Schmidt appeals from the judgment entered on February 11, 2016, in favor of Appellee Bollard & Associates, Inc. ("Bollard"), in this debt collection action.[1]  We affirm.

H&R Industries, Inc. ("H&R"), is a manufacturer and supplier of parts and equipment.  Mr. Schmidt is H&R's owner.  He also makes property investments.  Bollard brought this action against H&R and Mr. Schmidt for outstanding commissions on sales that Bollard generated for H&R products. Insofar as is relevant here, Bollard contended that Mr. Schmidt made an oral promise to pay H&R's corporate debt from his personal assets.  The trial court found in favor of Bollard following a one-day bench trial, and we

---

[1] The other party to this action, H&R Industries, Inc., has not appealed.

therefore summarize the relevant evidence from the trial as it relates to Mr. Schmidt's alleged agreement to pay H&R's debt to Bollard.

Donna M. Scheuren, a long-time manufacturers' representative at Bollard, testified that there came a time when H&R stopped paying commissions that Bollard had earned on sales, and that she set up meetings with Mr. Schmidt to discuss the outstanding debt. N.T., 8/24/15, at 11. At a dinner meeting, Mr. Schmidt told Ms. Scheuren "that many of his issues regarding cash flow problems were related to many of his personal investments, personal assets, ventures." *Id.* According to Ms. Scheuren, Mr. Schmidt said that he would be able to pay the debt owed for the commissions once he sold some of his properties:

> [I]n [Mr. Schmidt's] office we sat and discussed townhouses that he was building up in Allentown, Pennsylvania and he showed me brochures and marketing paraphernalia. He explained that he was an investor in these townhomes and due to the slow down they weren't selling quite as fast as he had hoped.
>
> But whether he bought out another contractor or builder or whether these homes started to sell and the market bounced back he would have the money from that particular venture to be square and pay out the past due commissions.
>
> If that didn't happen in a timely fashion, he also shared with me his properties in Cherry Hill, New Jersey. He had two buildings over there that were up for sale and he was patiently waiting for Walgreen's to come through with an offer on that building. . . . But the general consistency of the whole conversation was as soon as one of those ventures broke loose **Mr. Schmidt said** he would pay his debt and **those personal assets would be able to clean up the commissions** in one fell swoop when they were sold.

*Id.* at 11-13 (emphasis added).

Bollard's owner, Richard A. Bollard ("Mr. Bollard"), similarly testified that he and Mr. Schmidt "talked about his properties in Allentown" and "the building over in Jersey" and that Mr. Schmidt told him, "I will definitely pay you guys." N.T., 8/24/15, at 71. Mr. Bollard stated that he "went to Allentown with [Mr. Schmidt] to look at the property up there." *Id.* at 72. Mr. Bollard reiterated, "[Mr. Schmidt] was always saying, hey, when I get flush, when I get something here, I will pay you guys. His words were I always pay my debts." *Id.* Mr. Bollard further testified:

Q. Now, when you had these discussions with [Mr. Schmidt], was there ever anyone else around concerning his promises to pay you personally?

A. Yes, I mean, I remember I was out with Tom Kutzer a couple of times, Jeff Amtman. John Watt was with us one time and had a conversation, too.

Q. And the conversations are what you had discussed here?

A. Basically, that he would take care of us. **He would pay us** either through the business or **personally out of his own pocket if he had to.**

*Id.* at 73-74 (emphases added).

Thomas M. Kutzer, a former supply manager for one of H&R's customers, corroborated Mr. Bollard's testimony, confirming that **Mr. Schmidt "would always say** that he was good for everything **personally."** N.T., 8/24/15, at 56 (emphases added). During cross-examination, Mr. Kutzer reiterated:

Q. Now, do you have any idea -- you said that [Mr. Schmidt] said I will personally be responsible. Did he use those words?

A.    **He said** his word is good and **he was personally responsible for . . . what he owed.**

*Id.* at 59 (emphases added).

During the trial, Mr. Schmidt testified as follows:

Q.    . . . Mr. Bollard alleges that in 2007 and on times thereafter, you gave him assurances that you would personally pay his commissions.  What's your response to that?

A.    My response.  Why would I make such an assurance?  I mean it wasn't my debt.  It was company debt.

Q.    Okay.  Did you ever promise him that you personally would pay his commissions?

A.    I never promised that I would personally pay his commissions or that I could do anything other than the fact that if the company didn't have the funds, he'd have to wait. . . .

Q.    Okay.  It's been testified to that you discussed with Mr. Bollard your investment in Allentown.  Do you recall that discussion?

A.    Vaguely, but not one hundred percent.

Q.    All right.  Did you ever take a trip with Mr. Bollard to Allentown to look at the investment that you had there?

A.    I don't – I honestly don't believe I took a trip up there with him.  He might have gone up there on his own, but I don't remember going up there with him.  It's got to be refreshed in my mind.

Q.    Does that investment have anything to do with H&R Industries?

A.    No.

Q.    Did money from H&R Industries go into that investment?

A.    No. . . .

Q. Did you ever discuss with Mr. Bollard or with Donna Schueren an investment you had in Cherry Hill, New Jersey?

A. Could have been I mentioned it[?], yes.

Q. Did any of H&R Industries['] money go into that investment?

A. No, not a dime.

. . .

Q. Now, you indicated to [Mr. Schmidt's counsel] with regard to the New Jersey property that you could have mentioned it to Donna Scheuren; is that correct?

A. Only if they were interested in buying it.

Q. The New Jersey property?

A. Right.

Q. So you didn't have any discussions with [Ms. Scheuren?] . . .

A. I recall I did talk to her about that because I wanted to do some refinancing or sell it. That was the only reason.

Q. So you did bring up the fact that you were doing something with the property, correct?

A. I didn't deny it. . . .

Q. Did you provide [Ms. Scheuren] with brochures of the townhomes that you were trying to sell in Allentown?

A. Yes.

Q. And did you indicate to her at that time that if you were able to sell those townhomes that you would be able to make payment for the outstanding commissions due to [Bollard]?

A. No. That's mixing my personal money with the company money. That's not allowed.

. . .

I never promised anybody personally that they would get paid for a company debt. . . .

[Q. E]ven though you were telling [Mr. Bollard] that the company was in financial difficulty and he was owed a lot of money, you never told him you would make sure that he got paid so that he would continue to sell for you?

A.    I don't believe so.

N.T., 8/24/15, at 135-37, 141-42, 146-47.

At the conclusion of the trial, counsel for Mr. Schmidt presented the

following argument:

I believe the Court will find that there is an obligation by H&R Industries to pay Bollard & Associates.  I, in fact, concede that. But . . . the personal assurance, as the Court opined early on, is, in fact, the issue.  The Statute of Frauds is not relevant here . . . But that does not eliminate the level of proof required and it simply has to be more than balancing a scintilla of evidence as we do in the civil world.  Just a little balance, a feather more on one side. It has to be clear and convincing that someone would go beyond their corporate entity and make a commitment.

It's significant that there is no writing to commemorate this promise personally.  No memorandum, no confirmation, nothing whatsoever.  It's a — it's a well thought out clever effort but it doesn't bear enough proof, if Your Honor pleases.

N.T., 8/24/15, at 157-58.

After the bench trial, on August 31, 2015, the trial court entered the

following order:

**AND NOW,** this 31st day of August, 2015, after a bench trial on the above captioned matter and review of the record, it is hereby **ORDERED** and **DECREED** that the parties are given forty (40) days from the date of this order to submit <u>FINDINGS OF FACT and CONCLUSIONS OF LAW</u> for the court's review.

It is further **ORDERED** that such <u>FINDINGS and CONCLUSIONS</u> *shall address the appropriate burden of proof* to be utilized in the above captioned matter (ie., oral personal guarantee) as well as specifically address the damages sought against each Defendant, as the same is not clear from a reading of the Complaint.

Order, 8/31/15 (underlining in original; italicized emphasis added). Despite this order, neither H&R nor Mr. Schmidt filed Findings of Fact or Conclusions of Law.[2] On October 27, 2015, the trial court found in favor of Bollard and against H&R and Mr. Schmidt, awarding $402,815.73, plus interest. The court said it rendered its decision after review of the proposed Findings of Fact and Conclusions of Law submitted by Bollard, "as well as after independent review of the record and case law." Trial Ct. Op. at 1. The trial court stated that by "fail[ing] to provide the court with the requested Findings and Conclusions," Mr. Schmidt had "abandon[ed] his burden of proof argument." *Id.* at 3; *see also id.* at 2.

On November 9, 2015, Mr. Schmidt filed a post-trial motion, in which he argued, among other things, that Bollard "did not meet its burden of proof to establish a personal guarantee of an individual, [*i.e.,*] Harry Schmidt to pay the debt of H&R Industries, Inc[.] to [Bollard]." Mr. Schmidt's Post-Trial Mot., 11/6/15, at 1 ¶ 2. The motion did not specify what burden of proof should apply. On December 21, 2015, Mr. Schmidt filed a praecipe to attach a memorandum of law to his motion that argued sufficiency and weight of the evidence and contended that the burden of

---

[2] Mr. Schmidt's counsel contends that he sent letters to the trial court to request an extension of time to file the proposed Findings and Conclusions, but that the court "never responded" to his letters. Schmidt Brief at 8.

proof applicable to Bollard's claim was clear and convincing evidence. On January 5, 2016, the trial court denied Mr. Schmidt's post-trial motion. On January 8, 2016, Mr. Schmidt filed a motion for reconsideration, which the trial court denied on February 9, 2015.

Judgment was entered on February 11, 2016, and Mr. Schmidt then filed this timely appeal. On March 15, 2016, the trial court ordered Mr. Schmidt to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Mr. Schmidt complied on April 4, 2016. Among other issues, Mr. Schmidt contended that the trial court erred by not applying a clear and convincing burden of proof. Pa.R.A.P. 1925(b) Statement, 4/4/16, at 1.

In the statement of the questions involved pursuant to Pa.R.A.P. 2116 that is included in Mr. Schmidt's brief to this Court, he raises the following issues, which we reproduce verbatim:

> I. Whether [the trial] court failed to see the clear inconsistencies offered in [Bollard]'s witnesses['] testimony? No one (except [Bollard]'s counsel) said Harry Schmidt personally promised to pay the debt of his company; and the date of any alleged promise was never proven. [Bollard]'s case is based upon oral statements with no written evidence to support its claim.
>
> II. If a personal promise to pay the debt of [H&R to Bollard] was conditioned upon Harry Schmidt's liquidation of assets referred to as the Allentown townhouses property and/or the Cherry Hill property, absent receiving funds from these personal assets, can the conditional personal promise, even if made, cannot be enforced?

Schmidt Brief at 3.

- 8 -

## Sufficiency

In his first issue, Mr. Schmidt contends that the evidence is insufficient to hold him personally liable for the debts owed to Bollard by his company, H&R. As we stated in **Commonwealth v. Sullivan**, 820 A.2d 795, 805 (Pa. Super. 2003) (citation omitted), **appeal denied**, 833 A.2d 143 (Pa.2003):

> A claim challenging the sufficiency of the evidence is a question of law. . . . When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving [the verdict winner] the benefit of all reasonable inferences to be drawn from the evidence.

"As a reviewing court, we may not weigh the evidence or substitute our judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence." **Commonwealth v. Chambers**, 157 A.3d 508, 512 (Pa. Super. 2017) (quoting **Commonwealth v. Haughwout**, 837 A.2d 480, 484 (Pa. Super. 2003)). Applying this standard of review, we conclude that Mr. Schmidt is not entitled to relief on his sufficiency claim.

In arguing that the record did not establish that he "personally promised to pay the debt of his company," Mr. Schmidt asserts that the trial court "failed to see the clear inconsistencies offered in [Bollard]'s witnesses' testimony" that he made such a promise. Schmidt Brief at 10; **see also id.** at 12, 26.[3] Mr. Schmidt avers that "[n]o one (except [Bollard]'s counsel)

_____

[3] As Mr. Schmidt frames his argument, it is not entirely clear whether he contends that the evidence was insufficient to find him liable as a matter of law, which would require reversal of the judgment, or whether the trial court's decision was against the weight of the evidence, which would require a new trial. In view of Mr. Schmidt's emphasis on the burden of proof, we understand that his argument is lack of sufficiency. To the extent

*(Footnote Continued Next Page)*

said Harry Schmidt . . . personally promised to pay the debt of his company." *Id.* at 10.

In connection with his argument, Mr. Schmidt contends that the trial court failed to apply the correct burden of proof to Bollard's claim against him. Mr. Schmidt emphasizes that Bollard bases its claim solely on a purported oral promise by Mr. Schmidt to pay. He points out that such a promise normally would be unenforceable under the Statute of Frauds of 1855, 33 P.S. § 3,[4] but is excepted from that statute where, as here, "the main object of the promisor is to serve his own pecuniary or business purpose." *Biller v. Ziegler*, 593 A.2d 436, 440 (Pa. Super. 1991) (citations omitted); *see also Webb Mfg. Co. v. Sinoff*, 674 A.2d 723, 725 (Pa.

---
*(Footnote Continued)*

Mr. Schmidt also argues that the decision was against the weight of the evidence, we conclude that Mr. Schmidt is not entitled to relief. "In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (citation and internal quotation marks omitted), *appeal denied*, 138 A.3d 4 (Pa. 2016). Here, the verdict is supported by the unambiguous testimony of Ms. Scheuren, Mr. Bollard, and Mr. Kutzer. N.T., 8/24/15, at 12-13, 59, 73-74. Thus, it is not so tenuous, vague, and uncertain that it shocks the conscience. *See Talbert*, 129 A.3d at 546.

[4] This provision, Act No. 1855-322, § 1, P.L. 308 (Apr. 26, 1855), is a "supplement" to the Statute of Frauds of 1772 and provides:

> No action shall be brought . . . whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized.

33 P.S. § 3.

Super. 1996); ***Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 517 (Pa. Super. 1995) (*en banc*).[5] Relying on non-binding federal law — particularly, ***Jefferson-Travis, Inc. v. Giant Eagle Markets, Inc.***, 393 F.2d 426 (3d Cir. 1968) — Mr. Schmidt contends that in this situation, a claim of such an oral promise must be proven by clear and convincing evidence, rather than under the preponderance-of-the-evidence standard normally applicable to civil cases.

The trial court opined that although Mr. Schmidt had raised this issue in his closing argument at trial, he "abandoned and/or waived" it by failing to submit post-trial Findings of Fact and Conclusions of Law in response to the court's order that the parties address the burden-of-proof issue. Trial Ct. Op. at 2-3. Alternatively, the court held that even if the clear-and-convincing-standard applied, Bollard met its burden under that standard. ***Id.*** at 4-5, 11. After careful review of the record, we agree with the trial court's latter holding and conclude that we therefore need not reach the waiver question[6] or decide which burden of proof applies to cases like this one.

---

[5] All parties agree that this exception, which is commonly referred to as the "leading object" or "main purpose" rule, applies here, and we therefore do not consider that question.

[6] On waiver, we note that Mr. Schmidt did not identify the burden of proof as one of his issues in his brief's Statement of Questions Involved under Appellate Rule 2116, and that Rule 2116(a) provides that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." We also observe, however, that Rule 2116(a) further provides that a Statement's listed issues "will be deemed to include
*(Footnote Continued Next Page)*

- 11 -

Although Bollard does not agree that the clear and convincing standard applies to this case, it argues in its brief that its proof met that standard:

> [E]ven though not required to under the law, [Bollard] has demonstrated by clear and convincing evidence that [Appellant] Schmidt induced [Bollard] to continue selling for H&R notwithstanding H&R's financial difficulties by virtue of utilizing the long standing relationship and the promise to be personally responsible for the commissions earned.

Bollard Brief at 16. In finding in Bollard's favor, the trial court stated:

> The record clearly established that there was a long standing relationship between the parties; that [Bollard] was one of two entities that brought business to [H&R and Mr. Schmidt] over the past fifteen years; that [H&R and Mr. Schmidt] fell behind in commission payments; that there were several meetings concerning the outstanding commissions; that at those meetings Harry Schmidt continually requested that [Bollard] continue to sell despite the arrearages; that at those meetings H&R['s] owner, Harry Schmidt, stated that he was good for the money; that H&R['s] owner, Harry Schmidt, had conversations about his personal property with [Bollard] and [Bollard]'s employee as it related to the outstanding commissions; and that [Bollard] received material about, and toured some of Harry Schmidt's personal property, pursuant to conversations concerning the arrearages.

Trial Ct. Op. at 4-5. In light of this evidence, the court concluded that "[t]he record . . . amply supports the trial court's factual finding that [Bollard] showed by clear, direct, weighty and convincing evidence that [Appellant] Harry Schmidt personally guaranteed the commission payments owed[.]" *Id.* at 5. Viewing the evidence in a light most favorable to Bollard as the verdict winner, we agree.

*(Footnote Continued)* ⸻

every subsidiary question comprised therein" and that a statement that a plaintiff failed to prove a claim by sufficient evidence necessarily will encompass consideration of which standard of proof applies to the claim.

Ms. Scheuren testified that Mr. Schmidt told her that he would use his personal assets to "clean up" the debt he owed to Bollard.  N.T., 8/24/15, at 12-13.  Mr. Bollard testified that Mr. Schmidt said that he would pay Bollard "personally out of his pocket if he had to."  *Id.* at 73-74.  Mr. Bollard added that this guarantee had been made in front of objective third parties, including Mr. Kutzer.  *Id.*  Mr. Kutzer confirmed that he had heard Mr. Schmidt tell Mr. Bollard "that he was good for everything personally" and that "he was personally responsible for what he owed."  *Id.* at 59.[7]  Thus, three witnesses testified that Mr. Schmidt orally promised to guarantee H&R's debt.  *Id.* at 12-13, 59, 73-74.  The record therefore contradicts Mr. Schmidt's appellate argument that "[n]o one (except [Bollard]'s counsel) said Harry Schmidt . . . personally promised to pay the debt of his company."  *See* Schmidt Brief at 10.

Only one witness — Mr. Schmidt, himself — stated that he never made such a guarantee, N.T., 8/24/15, at 135-36, 146, and the trial court, as fact-

---

[7] Mr. Schmidt argues that Mr. Kutzer's testimony was equivocal because when he was asked whether Mr. Schmidt's promise of payment referred "to his company or to his own pocket," Mr. Kutzer responded, "I'm not a mind reader.  I don't know. . . . Either one."  Schmidt Brief at 13-14 (quoting N.T., 8/24/15, at 59).  The trial court observed Mr. Kutzer's testimony and understood it to mean that Mr. Schmidt would pay personally if H&R did not pay the debt.  We defer to the trial court's understanding of Mr. Kutzer's testimony.  As noted above, "[a]s a reviewing court, we may not weigh the evidence or substitute our judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence."  *Chambers*, 157 A.3d at 512; *see also Commonwealth v. Stiles*, 143 A.3d 968, 981 (Pa. Super.) ("we may not weigh the evidence and substitute our judgment for the fact-finder"), *appeal denied*, 163 A.3d 403 (Pa. 2016).  Hence, we defer to the findings by the trial court on this issue and find no error.

finder, said it was "not persuaded" by Mr. Schmidt and found his testimony to be "non-credible" and "evasive and contradictory." Trial Ct. Op. at 5, 9. We are required to defer to the trial court's findings on credibility. ***Commonwealth v. Talbert***, 129 A.3d 536, 543 (Pa. Super. 2015), ***appeal denied***, 138 A.3d 4 (Pa. 2016).

> To meet the clear and convincing evidence standard --
>
> [t]he witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the [fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

***Lessner v. Rubinson***, 592 A.2d 678, 681 (Pa. 1991) (quoted citation omitted). "It is not necessary that the evidence be uncontradicted provided it carries a clear conviction to the mind or carries a clear conviction of its truth." ***In the Interest of J.M.***, 166 A.3d 408, 423 (Pa. Super. 2017) (quoted citation omitted). We conclude that the trial court did not err when it found that the evidence was sufficient under this standard to establish that Mr. Schmidt orally promised personally to guarantee the debt that his business, H&R, owed to Bollard. Accordingly, Mr. Schmidt's general sufficiency issue is without merit.

**Conditional Promise**

For his second issue, Mr. Schmidt contends that any oral promise by him to pay "was conditioned upon Harry Schmidt's liquidation of assets referred to as the Allentown townhouses property and/or the Cherry Hill

property," and that "absent receiving funds from these personal assets, the conditional personal promise, even if made, cannot be enforced." Schmidt Brief at 16 (emphasis omitted). Although Mr. Schmidt preserved this issue in his post-trial motion (at ¶ 4) and statement of errors under Appellate Rule 1925(b) (at ¶ 2), the trial court did not address this issue. We conclude that no relief is due with respect to it.

Upon reviewing the record, we find nothing to support Mr. Schmidt's contention that his personal guarantee to pay the debt to Bollard was contingent upon the sale of his Allentown or Cherry Hill properties. Although Ms. Scheuren and Mr. Bollard testified that Mr. Schmidt discussed those properties with them and that Mr. Schmidt and Mr. Bollard said he went to Allentown to look at that property, neither witness ever stated that he or she agreed, on behalf of Bollard, that Mr. Schmidt would not have to pay his debt to Bollard if the Allentown and Cherry Hill properties were not sold. *See* N.T., 8/24/15, at 11-12, 71-72.

Additionally, in his trial testimony, Mr. Schmidt himself claimed that he never discussed the Allentown or Cherry Hill properties with Mr. Bollard or Ms. Schueren. N.T., 8/24/15, at 136-37.[8] The record does not support his

---

[8] Although Mr. Schmidt did later state that he provided Ms. Scheuren with brochures of the townhouses on his Allentown property, he immediately added that he did not tell her that his ability to pay the debt to Bollard was predicated upon the sale of those townhouses, because "[t]hat's mixing [his] personal money with [his] company['s] money." N.T., 8/24/15, at 142. He said that, if he had mentioned the Cherry Hill property to Ms. Scheuren, it was only to see if "they" were interested in buying the property and not with regard to the debt owed to Bollard. *Id.* at 141.

claim that his promise was dependent upon a condition that he says he never discussed with the other party. Accordingly, Mr. Schmidt's second issue merits no relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/29/17